COOLEY GODWARD KRONISH LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
SAMANTHA M. EVERETT (234402)
(severett@cooley.com)
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Defendant
SAZERAC COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH DI GRAZIA, | Case No.  5:08-CV-01562-JW |
| Plaintiff, | **DEFENDANT SAZERAC COMPANY, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| SAZERAC COMPANY, INC., | |
| Defendant. | |

Ctrm:        8
Judge:       Hon. James Ware
Date:        May 5, 2008
Time:        9:00 am

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

MOTION TO DISMISS
5:08-CV-01562-JW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................................2

II.     STATEMENT OF RELEVANT FACTS ......................................................................4

III.    LEGAL STANDARDS UNDER RULE 12(B)(6) ........................................................6

IV.     ARGUMENT ..................................................................................................................8

        A.      Plaintiff's First, Second, and Third Causes of Action Fail Because Sazerac
                Has No General Duty To Pay Plaintiff ..............................................................8

                1.      Plaintiff Cannot State a Claim for Breach of Contract ...........................9

                2.      Plaintiff Cannot State a Claim for Breach of the Implied Covenant
                        of Good Faith and Fair Dealing ............................................................11

                3.      Plaintiff Cannot State a Claim for Unjust Enrichment ..........................13

                4.      Plaintiff Cannot State a Claim for Breach of an Implied Covenant to
                        Continue Purchasing Herradura Brands .................................................13

                5.      Plaintiff Cannot State a Claim for Third-Party Beneficiary Rights..........15

V.      CONCLUSION.............................................................................................................16

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Arno v. Club Med., Inc.,*
22 F.3d 1464 (9th Cir. 1984) ..................................................................................6

5

*Badie v. Bank of America,*
67 Cal. App. 4th 779 (1998) ................................................................................11

6

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ......................................................................................5, 6

7

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996) ..................................................................................5

8

*Carma Developers Inc. v. Marathon Development Cal. Inc.,*
2 Cal. 4th 342 (1992) ....................................................................................11, 13

9

*College Block v. Atlantic Richfield Co.,*
206 Cal. App. 3d 1376 (1988) ............................................................................11

10

*Consol. World Invests., Inc. v. Lido Preferred Ltd.,*
9 Cal. App. 4th 373 (1992) ....................................................................................8

11

*Cousins Inv. Co. v. Hastings Clothing Co.,*
45 Cal. App. 2d 141 (1941) ..........................................................................11, 13

12

*Diamond Woodworks, Inc. v. Argonaut Ins. Co.,*
109 Cal. App. 4th 1020 (2003) ...........................................................................15

13

*Durning v. First Boston Corp.,*
815 F.2d 1265 (9th Cir. 1987) ..............................................................................6

14

*Erie R. Co. v. Tomkins,*
304 U.S. 64 (1938) ................................................................................................6

15

*Founding Members v. Newport Beach Country Club,*
109 Cal. App. 4th 944 (2003) ...............................................................................9

16

*Fundin v. Chicago Pneumatic Tool,*
152 Cal. App. 3d 951 (1984) ................................................................................7

17

*Garcia v. Truck Ins. Exchange,*
36 Cal. 3d 426 (1984) ........................................................................................14

18

*Gen. Signal Corp. v. MCI Telecomms. Corp.,*
66 F.3d 12500 (9th Cir. 1995) ..............................................................................6

19

*Gulf Ins. Co. v. Hi-Voltage Wire Words, Inc.,*
388 F.Supp.2d 1134 (E.D. Cal. 2005) ................................................................15

20

*Heppler v. J.M. Peters Co.,*
73 Cal. App. 4th 1265 (1999) ............................................................................10

21

*Kossian v. American Nat. Ins. Co.,*
254 Cal. App. 2d 647 (1967) ..............................................................................12

22

*Lectrodryer v. SeoulBank,*
77 Cal. App. 4th 723 (2000) ...............................................................................12

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Levi Strauss & Co. v. Aetna Casualty and Surety Co.,*
   184 Cal. App. 3d 1479 (1986) ..................................................................................3, 10

4

*Loduca v. Polyzos,*
   153 Cal. App. 4th 334 (2007) ........................................................................................14

5

*Martinez v. Socoma Cos., Inc.,*
   11 Cal. 3d 394 (1974) ....................................................................................................15

6

*Melchior v. New Line Prods., Inc.,*
   106 Cal. App. 4th 779 (2003) ........................................................................................12

7

*Murphy v. Allstate Ins. Co.,*
   17 Cal. 3d 936 (1976) ....................................................................................................14

8

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.,*
   228 F.3d 1043 (9th Cir. 2000) .........................................................................................6

9

10

*National City Police Officers' Assn. v. City of National City,*
   87 Cal. App. 4th 1274 (2001) ..........................................................................................9

11

*Navarro v. Block,*
   250 F.3d 729 (9th Cir. 2001) ....................................................................................5, 12

12

*Perrine v. Pacific Gas & Elec. Co.,*
   186 Cal. App. 2d 442 (1960) .........................................................................................14

13

*Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.,*
   102 Cal. App. 4th 765 (2002) ........................................................................................14

14

15

*San Diego Housing Comm'n v. Industrial Indem. Co,*
   95 Cal. App. 4th 669 (2002) ..........................................................................................15

16

*Walnut Creek Pipe Dist. v. Gates Rubber Co. Sales Div.,*
   228 Cal. App. 2d 810 (1964) .............................................................................10, 13, 14

17

*Warren v. Fox Family Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003) ...................................................................................7, 13

18

*Wolf v. Super. Ct.,*
   107 Cal. App. 4th 25 (2003) ..........................................................................................11

19

20

*Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.,*
   135 F.3d 658 (9th Cir. 1998) .......................................................................................6, 9

21

**STATUTES**

Cal. Civ. Code § 1559..............................................................................................................14, 15

22

**OTHER AUTHORITIES**

23

California Forms of Jury Instruction, CACI 325 ............................................................................10

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
NEW YORK

1  **NOTICE OF MOTION AND MOTION TO DISMISS**

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS MATTER:

3  PLEASE TAKE NOTICE that on Monday, May 5, at 9:00 a.m., or as soon thereafter as

4  this motion may be heard, defendant Sazerac Company, Inc. ("Sazerac") will move to dismiss

5  with prejudice the claims set forth in plaintiff Deborah di Grazia's complaint.  This motion is

6  made under Federal Rule of Civil Procedure 12(b)(6).

7  Sazerac moves to dismiss with prejudice the first through fifth causes of action on the

8  ground that the complaint fails to state any claim upon which relief may be granted.  This motion

9  is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

10  Authorities, the pleadings on file, oral argument of counsel, and such other materials and

11  argument as may be presented in connection with the hearing on the motion.

12  **STATEMENT OF THE ISSUE**

13  Under a royalty agreement between Sazerac and plaintiff's deceased husband, does

14  Sazerac have a continuing duty to make payments to plaintiff where:  (a) the royalty agreement

15  specifically conditions such payments on Sazerac's purchases of product from a third party under

16  a separate distribution agreement; (b) that third-party distribution agreement has ended; and (c)

17  Sazerac is no longer making any purchases under the distribution agreement?

18  **MEMORANDUM OF POINTS AND AUTHORITIES**

19  **I.    INTRODUCTION**

20  This is a straightforward dispute involving the plain language of a royalty agreement

21  between Sazerac and Loris di Grazia, plaintiff's deceased husband (the "Royalty Agreement").[1]

22  As explained in detail below, the Royalty Agreement was entered in 1991 and guaranteed certain

23  sums to Mr. di Grazia in exchange for Mr. di Grazia transferring to Sazerac the exclusive right to

24  import and distribute tequila manufactured in Mexico by Tequila Herradura, S.A., de C.V.

25  ("Herradura").[2]  Over the first seven years of the Royalty Agreement, Mr. di Grazia was

26  ***guaranteed*** an initial payment of $500,000 and further payments of $2 million provided the

27  ─────────────
[1] The Royalty Agreement is attached to plaintiff's complaint as Exhibit B.

28  [2] The distribution agreement between Herradura and Sazerac is attached to plaintiff's complaint as Exhibit A (the "Distribution Agreement").

1    Distribution Agreement remained in force.  Royalty Agreement, ¶2(a).  Plaintiff does not allege

2    any breach concerning these guaranteed payments.

3        After Mr. di Grazia received the $2.5 million in guaranteed payments, the Royalty

4    Agreement provided for further commission payments based exclusively on Sazerac's **purchases**

5    of tequila from Herradura under the Distribution Agreement.  *Id.*  As the complaint concedes,

6    Sazerac continued to pay Mr. di Grazia and plaintiff for as long as Sazerac was purchasing tequila

7    from Herradura.  Compl. ¶17.  The complaint further acknowledges that in 2006 Sazerac gave up

8    its right to distribute Herradura tequila in the United States, *id.* at ¶19, and thereafter stopped

9    making payments to plaintiff because Sazerac "was no longer making purchases of Herradura

10   Brands." *Id.* at ¶20.

11       As discussed below, the Royalty Agreement is clear on its face and repeatedly conditions

12   all payments beyond the initial guarantee on "purchases" of tequila by Sazerac from Herradura.

13   The Royalty Agreement is straightforward and logical – it guarantees a lucrative minimum

14   payment to Mr. di Grazia in exchange for relinquishment of his rights but then conditions future

15   payments on Sazerac's **purchases** of tequila from Herradura.  The requirement of a commercial

16   transaction as a condition of Sazerac's obligation is underscored in paragraph 2(a)(v) of the

17   Royalty Agreement, which specifically defines the term "purchases" as "deemed to have occurred

18   when ownership of the Brands has transferred from Herradura to Sazerac at the F.O.B. point …."

19   The complaint nowhere alleges that Sazerac has continued to purchase tequila from Herradura

20   under the Distribution Agreement while at the same time declining to pay royalties to plaintiff.

21       The Royalty Agreement shows that these sophisticated parties negotiated for certain

22   guaranteed payments to Mr. di Grazia during the early years of the Distribution Agreement.

23   Royalty Agreement, ¶2(a)(i)-(ii).  The parties also included in the Royalty Agreement a provision

24   covering what Mr. di Grazia would be paid if the Distribution Agreement were terminated prior

25   to December 31, 1998.  *Id.* at ¶2(a)(ii).  Had the parties chosen to do so, they could just as easily

26   have included additional language in the Royalty Agreement providing for a termination payment

27   by Sazerac to Mr. di Grazia in the event Sazerac's rights under the Distribution Agreement were

28   terminated, voluntarily or involuntarily, **after** December 31, 1998, or **after** satisfaction of the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

MOTION TO DISMISS
5:08-CV-01562-JW

1   initial guaranteed payments.  The parties chose not to include such language and chose not to

2   guarantee any further payments to Mr. di Grazia after the initial guarantees were satisfied.  This

3   choice should end the inquiry.  "The court does not have the power to create for the parties a

4   contract which they did not make, and it cannot insert in the contract language which one of the

5   parties now wishes were there."  *Levi Strauss & Co. v. Aetna Casualty and Surety Co.*, 184 Cal.

6   App. 3d 1479, 1486 (1986).

7        Plaintiff asserts five causes of action:  (1) breach of the Royalty Agreement; (2) breach of

8   the implied covenant of good faith and fair dealing; (3) unjust enrichment; (4) breach of an

9   implied covenant to continue purchasing Herradura brands; and (5) breach of plaintiff's rights as

10  a third-party beneficiary of the Distribution Agreement.  Whatever label plaintiff attaches to her

11  claims, however, each is fundamentally dependent on the existence of an obligation owed to

12  plaintiff by Sazerac and arising from either the Royalty Agreement or the Distribution

13  Agreement.  The complaint fails on both fronts.

14       First, because the Royalty Agreement expressly conditions Sazerac's payment obligation

15  on Sazerac's "purchases" of Herradura tequila, and because plaintiff does not allege that Sazerac

16  is continuing to make such purchases, all of her claims under the Royalty Agreement must fail.

17  Second, because plaintiff is a stranger to the Distribution Agreement, and because plaintiff cannot

18  allege that the Distribution Agreement was actually breached by Sazerac, her implied third-party

19  claims under that contract must also fail.  Accordingly, the complaint should be dismissed with

20  prejudice.

21  **II.    STATEMENT OF RELEVANT FACTS**

22       The Distribution Agreement was entered by Herradura and Sazerac on October 21, 1991,

23  and appointed Sazerac the exclusive United States importer and distributor of Herradura tequila

24  brands.  The initial term of the Distribution Agreement was 20 years.  Distribution Agreement,

25  ¶5.  However, Herradura reserved the right to terminate the Distribution Agreement if Sazerac did

26  not achieve certain growth metrics for the brands, *id.* at ¶15, or breached the Distribution

27  Agreement, *id.* ¶21(a)(i), or failed to meet certain licensure and financial conditions, *id.* at

28  ¶21(a)(ii)-(v).

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

**MOTION TO DISMISS**
**5:08-CV-01562-JW**

The Royalty Agreement was entered by Sazerac and Mr. di Grazia on October 21, 1999. Under the Royalty Agreement, Mr. di Grazia agreed to relinquish his rights as "the exclusive representative" in the United States for Herradura tequila.  Royalty Agreement, p. 1.  In exchange, Sazerac agreed to pay Mr. di Grazia "an initial payment upon the effective date of the [Distribution] Agreement" and "subsequent payments *based upon purchases* of the Brands by Sazerac." *Id.* at ¶1(b)(ii) (emphasis added).  These payments were further defined as follows:

- An upfront payment of $500,000 ($25 per nine liter case for the first 20,000 cases of Herradura tequila that were then in inventory in the United States). *Id.* at ¶2(a)(i).

- After the upfront payment, Sazerac agreed to pay di Grazia $14 per nine liter case purchased by Sazerac from Herradura until a total of $2,000,000 was paid to di Grazia.  "If by December 31, 1998, Sazerac has not made to di Grazia payments totaling $2,000,000, Sazerac will pay to di Grazia, on that date, an amount equal to the difference between actual payments made and $2,000,000." *Id.* at ¶2(a)(ii).

- "Notwithstanding anything to the contrary in this paragraph 2(a)(ii), if the [Distribution] Agreement is terminated prior to December 31, 1998, Sazerac is obligated to pay to di Grazia only the amount of payments that accrued through the date of termination." *Id.*

- After Mr. di Grazia was paid the $2,000,000 guarantee (provided the Distribution Agreement was not terminated before December 31, 1998), Sazerac agreed to pay him $6 per nine liter case "on the *purchases* of the brands by Sazerac" until the expiration of the initial term of the Distribution Agreement. *Id.* at ¶2(a)(iii) (emphasis added).

* * * *

Because the Royalty Agreement specifically conditions payment to di Grazia on purchases by Sazerac, the latter term is expressly defined in the Royalty Agreement.  "[P]urchases by Sazerac from Herradura shall be deemed to have occurred when ownership of the Brands has

4.

1  transferred from Herradura to Sazerac at the F.O.B. point, as provided in the [Distribution]

2  Agreement." *Id.* at ¶2(a)(v).

3      As the complaint acknowledges, "[f]or approximately 15 years, Sazerac ***made purchases***

4  of Herradura Brands, and it made regular payments to Mr. di Grazia ***based on those purchases***."

5  Compl., ¶17 (emphasis added).  In early 2006, Mr. di Grazia passed away.  *Id.* at ¶18.  Thereafter,

6  Sazerac continued to purchase Herradura tequila and continued to pay corresponding royalties to

7  plaintiff (Mr. di Grazia's widow).  *Id.*  Later that year, however, Herradura was acquired by

8  another company (Brown-Forman Corp.) and Sazerac "voluntarily gave up its rights to distribute

9  the Herradura Brands in the United States."  *Id.* at ¶19.  The complaint does not (and cannot)

10  allege that Sazerac made "purchases" under the Distribution Agreement after this time.  Sazerac

11  informed plaintiff that it would not make further payments under the Royalty Agreement because

12  it "was no longer making purchases of Herradura Brands."  *Id.* at ¶20.

13      Plaintiff filed her complaint in the California Superior Court for Monterey County on

14  February 20, 2008.  Sazerac was served through its registered agent for process in California on

15  February 21, 2008.  On March 21, 2008, Sazerac removed the action based on the diversity

16  jurisdiction of this Court.[3]

17  **III.    LEGAL STANDARDS UNDER RULE 12(b)(6)**

18      Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a claim when

19  "there is no cognizable legal theory or an absence of sufficient facts alleged to support a

20  cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal courts

21  "do not require heightened fact pleading of specifics, but only enough facts to state a claim to

22  relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007).

23  In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted

24  as true, as well as all reasonable inferences to be drawn from them."  *Navarro*, 250 F.3d at 732

25  (citing *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)).  However, "labels and

26  conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a

27

28  [3] Plaintiff is a resident of California.  Compl., ¶7.  Sazerac is incorporated in and has its principal place of business in Louisiana.  *Id.* at ¶8.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

MOTION TO DISMISS
5:08-CV-01562-JW

motion to dismiss. *Twombly,* 127 S.Ct. at 1965-66. *Accord Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1049 (9th Cir. 2000) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

In considering a motion to dismiss under Rule 12(b)(6), a federal district court sitting in diversity applies state substantive law and federal procedural rules. *See Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938). In determining which state law applies, the federal court applies the choice of law principles of the state in which it sits. *Arno v. Club Med., Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1984). Under California choice of law principles, where a contract designates the law to apply to disputes, the court must apply that state's law unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute. *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 12500, 1506 (9th Cir. 1995).

In this case, the Royalty Agreement provides that it "shall be construed and interpreted in accordance with the laws of the state of California…" Royalty Agreement, ¶5. Plaintiff resides in California, and all payments from Sazerac were directed to California. There is no California policy or statute that requires application of another state's law. Therefore, whether plaintiff has stated any cognizable legal claim should be determined under California law.

Finally, both the Royalty Agreement and the Distribution Agreement are attached to the complaint. *See supra* notes 1 & 2. Where the terms set forth in a written contract attached to a complaint do not support plaintiff's allegations of breach of contract, the terms of the written contract control. *See Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 665 (9th Cir. 1998) (where contract attached to complaint, "neither we nor the district court are required to accept as true conclusory allegations in the complaint which are contradicted by the clear import of the contract itself."); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim."

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

MOTION TO DISMISS
5:08-CV-01562-JW

(internal citations omitted); *Fundin v. Chicago Pneumatic Tool*, 152 Cal. App. 3d 951, 955-56 (1984) (sustaining demurrer to breach of contract claim based in part on terms of contract attached to complaint).

## IV.  ARGUMENT

### A.    Plaintiff's First, Second, and Third Causes of Action Fail Because Sazerac Has No General Duty To Pay Plaintiff

The Royalty Agreement obligated Sazerac to pay Mr. di Grazia a royalty that was expressly conditioned on Sazerac's "purchases" of Herradura tequila under the Distribution Agreement.  Royalty Agreement, ¶2(a).  Despite this plain language, plaintiff's first three causes of action all depend upon the conclusory allegation that Sazerac has a duty to pay royalties to plaintiff **in the absence of** such purchases.  Although plaintiff attaches different labels to these causes of action, the fundamental allegation is the same:

- "Sazerac breached the Agreement by failing to pay Mrs. di Grazia when Sazerac received payments in lieu of purchases…"  Compl. ¶23.
- "Sazerac breached the covenant of good faith and fair dealing by … receiving compensation … without paying Mrs. di Grazia…"  Compl. ¶28.
- "By failing to pay the appropriate portion of this amount to Mrs. di Grazia … Sazerac has been unjustly enriched…"  Compl. ¶31.

* * * * *

Simply alleging that the defendant "breached the agreement" or "has been unjustly enriched" is not sufficient to state a cause of action where the language of the contract is attached to the complaint and contradicts those allegations.  In the Ninth Circuit, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and  "do not ... necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal citations omitted).  Here, the Royalty Agreement specifically and repeatedly conditions Sazerac's obligation to make royalty payments on Sazerac's "purchases" of Herradura products.  Royalty Agreement, ¶1(b)(ii)(B), ¶2(a).  Because the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

MOTION TO DISMISS
5:08-CV-01562-JW

complaint itself concedes that Sazerac is no longer a party to the Distribution Agreement and is therefore no longer making the requisite purchases from Herradura, Sazerac is under no obligation to make further royalty payments.   No amount of careful pleading can create an obligation that does not exist under the plain terms of the contract.

### 1.    Plaintiff Cannot State a Claim for Breach of Contract

Plaintiff's first cause of action alleges breach of contract.   Plaintiff alleges that Sazerac breached the Royalty Agreement by failing to pay her when Sazerac received payments from either Brown-Forman or Herradura "in lieu of purchases Sazerac would otherwise have made during the remaining term of the Herradura-Sazerac Agreement." Compl. ¶23.   Notably, plaintiff is silent concerning where one might look in the Royalty Agreement for the "in lieu of purchases" clause that plaintiff now seeks to invent 17 years after the contract was negotiated by Mr. di Grazia and Sazerac.

In order to state a claim for breach of contract, a plaintiff must allege that:  (1) there was a contract between the parties (or an assignment of rights under a contract); (2) the plaintiff did all that she was required to do under the contract; (3) all conditions required for the defendant's performance occurred; (4) the defendant failed to do something required by the contract; and (5) the plaintiff was damaged in some way by that failure.   *See* California Forms of Jury Instruction, CACI 303.

Plaintiff has failed to allege sufficient facts to meet her pleading burden on the fourth element.[4]   Specifically, plaintiff does not and cannot claim that the express condition required for Sazerac's performance – "purchases" of Herradura products by Sazerac – took place as required by the Royalty Agreement.   *See Consol. World Invests., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992) (where defendant's duty to perform is conditioned on an event, plaintiff must plead and prove that the event transpired).   The bare allegation that Sazerac is liable when it failed to pay plaintiff after it received payments "in lieu of purchases," Compl. ¶ 23, is

---

[4] At this stage of the proceeding, Sazerac does not dispute that there was a contract, that plaintiff is a valid assignee, that she fulfilled her obligations, and that she was damaged in some way. Sazerac accepts these allegations as true only as required at the pleading stage and reserves the right to challenge these claims at a later date.

1  unsupported and unsupportable because the Royalty Agreement provides for no such thing. *See*

2  *Wyler Summit Partnership*, 135 F.3d at 665 (holding that "neither we nor the district court are

3  required to accept as true conclusory allegations in the complaint which are contradicted by the

4  clear import of the contract itself").

5      The Royalty Agreement is plain on its face and neither party should now be permitted to

6  rewrite its terms through extrinsic evidence or interpretive guesswork. *See Founding Members v.*

7  *Newport Beach Country Club*, 109 Cal. App. 4th 944, 955 (2003) (when a contract is clear on its

8  face, extrinsic evidence is not admissible and the plain meaning controls); *National City Police*

9  *Officers' Assn. v. City of National City*, 87 Cal. App. 4th 1274, 1279 (2001) (holding that

10  "language of an instrument must govern its interpretation if the language is clear and explicit").

11  The Royalty Agreement specifically provides that all commission payments following an initial

12  payment will be "based upon purchases of the Brands by Sazerac."  Royalty Agreement,

13  ¶1(b)(ii)(B); *see also* ¶2(a)(ii)-(iv).  The parties specifically negotiated this condition, going so far

14  as to include a separate definitional paragraph specifying that a purchase "shall be deemed to

15  have occurred ***when ownership of the Brands has transferred from Herradura to Sazerac at the***

16  ***F.O.B. point***, as provided in the Definitive Agreement." *Id.* at ¶2(v) (emphasis added).  It is an

17  indisputable condition precedent to Sazerac's payment obligation that ownership of the products

18  transfer to Sazerac.  Plaintiff does not even attempt to allege that this condition has been met.

19      Critically, the Royalty Agreement also reveals that the parties negotiated and agreed to

20  alternative payment mechanisms in certain situations that were not dependent on Sazerac's

21  purchases.  For example, the parties agreed that Mr. di Grazia would receive an upfront $500,000

22  payment based on the inventory of Herradura tequila then being stored in the United States. *Id.* at

23  ¶2(a)(1).  The parties also agreed that Sazerac would guarantee $2 million in royalty payments to

24  Mr. di Grazia as of December 31, 1998, even if Sazerac's purchases as of that date did not warrant

25  royalties in that amount (provided the Distribution Agreement was still in effect). *Id.* at ¶2(a)(ii).

26      After that date, however, ***and after payment of the $2.5 million guarantee***, the parties

27  expressly conditioned further payments on Sazerac's purchases of Herradura products.  That these

28  sophisticated parties agreed to an alternative payment mechanism in some situations but not in

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

9.

MOTION TO DISMISS
5:08-CV-01562-JW

others indicates that they knew how to negotiate such an alternative but chose not to do so.[5]  It is equally true that Mr. di Grazia was fully capable of seeking a guaranteed termination payment from Sazerac in the event the Distribution Agreement ended for any reason after December 31, 1998.  He chose not to do so and it would be manifestly unfair to permit plaintiff to rewrite the Royalty Agreement today.  Courts will neither "insert in the contract language which one of the parties now wishes were there" nor "add a term about which a contract is silent."  *Levi Strauss*, 184 Cal. App. 3d at 1486.  *See also Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1291 (1999) (declining to enforce alleged term of agreement because parties "could have included such a provision" had that been their intent).

Sazerac either made "purchases" from Herradura or it did not.  If the former, Sazerac may owe royalties to the plaintiff; if the latter, Sazerac owes nothing to plaintiff.   The parties negotiated the Royalty Agreement in this straightforward fashion and the "courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably."  *Walnut Creek Pipe Dist. v. Gates Rubber Co. Sales Div.*, 228 Cal. App. 2d 810, 815 (1964).

### 2.    Plaintiff Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff next alleges a breach of the covenant of good faith and fair dealing.  Plaintiff asserts that Sazerac breached the covenant "by voluntarily relinquishing its rights to distribute the Herradura Brands and receiving compensation therefore without paying Mrs. di Grazia in accordance with the [Royalty] Agreement."

In order to establish a breach of the implied covenant of good faith and fair dealing, the plaintiff must adequately plead four elements:  (1) there was a contract; (2) she did all that was required of her; (3) the conditions for Sazerac's performance occurred; and (4) Sazerac "unfairly interfered with her right to receive the benefits of the contract."  *See* California Forms of Jury Instruction, CACI 325.  The covenant does not create a fiduciary relationship.  *Wolf v. Super. Ct.*

---

[5] Mr. di Grazia was a sophisticated businessman who held the United States rights to Herradura for over 25 years and had previously negotiated similar agreements with Seagram's and other entities.  *See* Compl. ¶2; Royalty Agreement, p. 1.

COOLEY GODWARD KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

MOTION TO DISMISS
5:08-CV-01562-JW

107 Cal. App. 4th 25, 31 (2003). Moreover, implied terms in a contract will never be read to vary express terms. *Carma Developers Inc. v. Marathon Development Cal. Inc.*, 2 Cal. 4th 342, 374 (1992). The implied covenant of good faith and fair dealing can only be breached by objectively unreasonable conduct. *See Badie v. Bank of America*, 67 Cal. App. 4th 779, 796 (1998) (bank breached covenant by altering contract to require ADR and sending inadequate notice to account holders).

As discussed above, the condition triggering Sazerac's performance obligation did not occur. Plaintiff may not substitute implied terms in order to vary the express terms of the Royalty Agreement. *Carma Developers*, 2 Cal. 4th at 374. Accordingly, this claim fails for the reasons set forth above.

Plaintiff's second cause of action fails for an additional reason. Plaintiff alleges, in essence, that Sazerac had a duty to continue purchasing Herradura product through (at least) the end of the initial term. Compl. ¶28. The complaint alleges that Sazerac voluntarily relinquished that duty (and its rights under the Distribution Agreement), thereby causing a breach of the covenant of good faith and fair dealing. This theory directly contradicts California law. *See Cousins Inv. Co. v. Hastings Clothing Co.*, 45 Cal. App. 2d 141, 149 (1941) (where substantial minimum payment made by obligor, the covenant of good faith and fair dealing will not impose additional duty to stay in business); *College Block v. Atlantic Richfield Co.*, 206 Cal. App. 3d 1376, 1381-82 (1988) (applying same analysis).

On the face of the complaint, this is ***not*** a case in which Sazerac abandoned its obligations to Mr. di Grazia and left him without any return on any pre-1991 investment he made in the Herradura brands. To the contrary, the complaint essentially concedes that Mr. di Grazia was paid the $2.5 million guarantee as of December 31, 1998, and received "regular payments" thereafter based on Sazerac's "purchases of Herradura Brands." Compl. ¶17. The parties negotiated the Royalty Agreement at arms length and agreed not to include an additional payment guarantee after December 31, 1998, ***and*** after Mr. di Grazia was paid $2.5 million. The covenant of good faith and fair dealing will not permit plaintiff to re-draft the Royalty Agreement to her liking 17 years after it was signed.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

MOTION TO DISMISS
5:08-CV-01562-JW

### 3.    Plaintiff Cannot State a Claim for Unjust Enrichment

Plaintiffs' claim for "unjust enrichment" is barred because "there is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003).  In the absence of a cognizable legal ground on which plaintiff may proceed, this cause of action should be dismissed.  *See Navarro*, 250 F.3d at 732.  Even if such a cause of action exists, plaintiff's claim still fails because the complaint does not allege what is "unjust" about Sazerac receiving payment "in exchange for voluntarily giving up rights to distribute Herradura brands in the United States."  Compl. ¶31.  Had Sazerac continued making purchases of Herradura products and declined to pay Mr. di Grazia, one could plausibly argue that Sazerac would be unjustly enriched.  There is no such allegation here, nor could there be, and plaintiff's claim must fail.

Whether something is "unjust" is determined by the courts on a case-by-case basis.  *See Kossian v. American Nat. Ins. Co.*, 254 Cal. App. 2d 647, 650 (1967).  Generally, an unjust enrichment claim is only appropriate where a party obtains a benefit that it may not justly retain. *See Lectrodryer v. SeoulBank* 77 Cal. App. 4th 723, 726 (2000) (bank unjustly enriched when it refused to honor prepaid letter of credit and retained funds after letter expired).  Here, plaintiff's claim rests on the proposition, directly contradicted by the Royalty Agreement, that Sazerac has some duty to pay plaintiff additional sums beyond the multi-million dollar guarantee and despite having made no purchases of Herradura products.  For the reasons stated above, this claim cannot withstand scrutiny under either the Royalty Agreement, the Distribution Agreement, or California law.  Sazerac's motion to dismiss the third cause of action should be granted.

### 4.    Plaintiff Cannot State a Claim for Breach of an Implied Covenant to Continue Purchasing Herradura Brands

In her fourth cause of action, plaintiff again pursues a legal theory that is directly contradicted by the plain terms of the Royalty Agreement.  The complaint alleges that the Royalty Agreement contained an additional implied covenant that Sazerac "would continue to make purchases of Herradura Brands during the full term of the Herradura-Sazerac Agreement." Compl. ¶34.  The complaint concedes, as it must, that the parties chose not "to expressly state the covenant" anywhere in the Royalty Agreement.  Despite plaintiff's artful pleading, this cause of

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

MOTION TO DISMISS
5:08-CV-01562-JW

action must fail because California law does not recognize "implied covenants" that would alter the negotiated and express terms of an agreement. *Carma Developers*, 2 Cal. 4th at 374. It bears emphasis that Mr. di Grazia certainly could have negotiated for the very covenants now sought by the plaintiff. The parties ultimately did not agree to such additional terms. No amount of legal theorizing can re-write the Royalty Agreement to include guarantees and payment triggers that were never agreed to by Sazerac.

Implied covenants are strongly disfavored in California. "The law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity." *Walnut Creek*, 228 Cal. App. 2d at 815. A court will only read an implied covenant into a contract when five related elements are present:

> (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.

*Cousins*, 45 Cal. App. 2d at 149.

Although the complaint attempts to plead these elements, the effort is undone by the plain language of the Royalty Agreement. As discussed above, courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Warren*, 328 F.3d at 1139. Nor should courts at the pleading stage "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.*

Most significantly, plaintiff cannot plead facts to support the claim that the allegedly implied term is "indispensable" to effectuate the intent of the parties when other provisions of the contract directly undermine the implied term. The Royalty Agreement sets forth different payment mechanisms for different time periods: an initial payment, a guaranteed payment of $2,000,000, and last, payment as long as Sazerac continues to purchase products from Herradura. These clear provisions undermine plaintiff's claim that the newly implied term – a guaranteed payment in the absence of purchases by Sazerac – is indispensable to effectuate the intent of the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

MOTION TO DISMISS
5:08-CV-01562-JW

parties and was so clearly contemplated by the parties that they deemed it unnecessary to express it.  Mr. di Grazia could have negotiated for such a term and the parties could have agreed to it. They did not do so and there is no basis upon which to imply it now.  *See Walnut Creek*, 228 Cal. App. 2d at 815 (holding that "courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably").  Therefore, Mrs. di Grazia's implied covenant claim must be dismissed.

### 5.    Plaintiff Cannot State a Claim for Third-Party Beneficiary Rights

Plaintiff's final cause of action alleges that she is a third-party beneficiary of the Distribution Agreement between Herradura and Sazerac.  Section 1559 of the California Civil Code provides that "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  As a threshold matter, this claim must fail because plaintiff cannot establish that she was an intended beneficiary of the Distribution Agreement.

In order to recover as a third-party beneficiary, a plaintiff must plead that the subject contract was made expressly for her benefit and that it clearly appears in the contract that she was an intended beneficiary.  Cal. Civ. Code § 1559; *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 936, 943 (1976); *Perrine v. Pacific Gas & Elec. Co.*, 186 Cal. App. 2d 442, 446-47 (1960).  The plaintiff bears the burden of pleading and proving that the parties to the contract intended for her to benefit from it.  *Loduca v. Polyzos*, 153 Cal. App. 4th 334, 341 (2007); *Garcia v. Truck Ins. Exchange*, 36 Cal. 3d 426, 436-37 (1984).

Under this authority, plaintiff must plead that the parties intended for her to be the third-party beneficiary of the Distribution Agreement.  *See Road Sprinkler Fitters Local Union No. 669 v. G&G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 775 n.14 (2002) (union, as assignee of third-party beneficiary, had to establish its standing as third-party beneficiary).  Although plaintiff has alleged that her husband was a third-party beneficiary of the Distribution Agreement, she has not pled any facts to support equivalent status in her own right.  In addition, the Distribution Agreement nowhere indicates that the parties intended to ***directly*** benefit plaintiff.  At most, she is an incidental beneficiary and is therefore precluded from brining a claim to enforce the

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

MOTION TO DISMISS
5:08-CV-01562-JW

1     Distribution Agreement.  Cal. Civ. Code § 1559; *Martinez v. Socoma Cos., Inc.*, 11 Cal. 3d 394,

2     400 (1974); *Diamond Woodworks, Inc. v. Argonaut Ins. Co.*, 109 Cal. App. 4th 1020, 1039-1040

3     (2003).

4         Plaintiff's third-party claim fails for a second reason.  There is no separate right of a third

5     party to receive benefits from a contract ***independently*** of that contract.  Instead, the right of a

6     third party beneficiary is to enforce the underlying contract in the event of a breach of that

7     contract.  *See Gulf Ins. Co. v. Hi-Voltage Wire Words, Inc.*, 388 F.Supp.2d 1134, 1336-37 (E.D.

8     Cal. 2005).  Like a party to a contract, a third-party beneficiary must show: (1) the existence of a

9     contract; (2) performance or excuse for nonperformance; (3) breach; and (4) damages.  *See id.*;

10    *San Diego Housing Comm'n v. Industrial Indem. Co*, 95 Cal. App. 4th 669, 685 (2002) ("a

11    claimant may sue … as a third party beneficiary utilizing traditional contract principles, when the

12    duties under the policy flow directly in favor of the third party…  These rights are grounded in

13    Civil Code section 1559.").

14         Here, plaintiff does not allege that Sazerac breached the Distribution Agreement in any

15    way.  *See* Compl. ¶¶37-42.  In fact, she cannot make such a claim in good faith because, as she

16    alleges elsewhere, Sazerac exited the Distribution Agreement "voluntarily" and in exchange for a

17    monetary payment from Herradura or the brand's new owner (Brown-Forman Corp.).  *Id.* ¶19.

18    Third party beneficiary or not, plaintiff cannot complain of a breach that did not happen.  The

19    Court should therefore grant Sazerac's motion to dismiss the fifth and final cause of action.

20    **V.**     **CONCLUSION**

21         For each of these reasons, Sazerac respectfully requests that this Court dismiss with

22    prejudice, and without leave to amend, each cause of action asserted in plaintiff's complaint.

23    Dated:  March 28, 2008           Respectfully submitted,

24                         COOLEY GODWARD KRONISH LLP

25

26                         /s/

27                         Michael A. Attanasio

28                         Attorneys for Defendant
                                    SAZERAC COMPANY, INC.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

MOTION TO DISMISS
5:08-CV-01562-JW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DEBORAH DI GRAZIA,

              Plaintiff,

    v.

SAZERAC COMPANY, INC.,

              Defendant.

Case No.  5:08-CV-01562-JW

**[PROPOSED] ORDER GRANTING SAZERAC COMPANY, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(6)**

Ctrm:     8
Judge:    Hon. James Ware
Date:     May 5, 2008
Time:    9:00 am

**THIS MATTER**, having come before the Court on Defendant Sazerac Company, Inc.'s Motion to Dismiss Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(6), filed March 28, 2008, and the Court having considered all papers and pleadings submitted by the parties, and the oral arguments of counsel made at the hearing,

**IT IS HEREBY ORDERED** that Sazerac Company, Inc.'s motion to dismiss shall be **GRANTED** as to each cause of action and Plaintiff's Complaint shall be **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated: _____, 2008

_____
The Honorable James Ware
United States District Judge

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

[PROPOSED] ORDER GRANTING
MOTION TO DISMISS
5:08-CV-01562-JW

## PROOF OF SERVICE
### (FRCP 5)

I am a citizen of the United States and a resident of the State of California. I am employed in San Diego County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley Godward Kronish LLP, 4401 Eastgate Mall, San Diego, California 92121. On the date set forth below I served the documents described below in the manner described below:

1.    Defendant Sazerac Company, Inc.'s Notice of Motion and Motion to Dismiss Complaint for Failure to State a Claim; Memorandum of Points and Authorities in Support Thereof

2.    [Proposed] Order Granting Sazerac Company, Inc.'s Motion to Dismiss Complaint Pursuant to Fed.R. Civ. Proc. 12(b) (6)

on the following part(ies) in this action:

☒    (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

Andrew A. Bassak      abassak@manatt.com
Ann M. Heimberger    aheimberger@manatt.com

☒    (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

Ross K. Naughton
Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111

Executed on March 28, 2008, at San Diego, California.

/s/_____
Jacqueline J. Foglio

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

PROOF OF SERVICE
5:08-CV-01562-JW