1  MANATT, PHELPS & PHILLIPS, LLP
   ANDREW A. BASSAK (Bar No. CA 162440)
2  E-mail:  ABassak@manatt.com
   ANN M. HEIMBERGER (Bar No. CA 197060)
3  E-mail:  AHeimberger@manatt.com
   ROSS K. NAUGHTON (Bar No. CA 254926)
4  E-mail:  RNaughton@manatt.com
   One Embarcadero Center, 30th Floor
5  San Francisco, CA  94111
   Telephone:  (415) 291-7400
6  Facsimile:  (415) 291-7474

7  Attorneys for Plaintiff
   DEBORAH DI GRAZIA

8

9              UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT

11                 SAN JOSE DIVISION

12

13  DEBORAH DI GRAZIA, a widow,          No.  5:08-CV-01562 JW

14            Plaintiff,                 **PLAINTIFF DEBORAH DI GRAZIA'S
                                         OPPOSITION TO DEFENDANT
15       vs.                             SAZERAC COMPANY, INC.'S MOTION
                                         TO DISMISS COMPLAINT FOR FAILURE
16  SAZERAC COMPANY, INC., a Louisiana   TO STATE A CLAIM**
   corporation; and DOES 1-20,
17                                       Date:      June 9, 2008
            Defendants.                  Time:      9:00 a.m.
18                                       Ctrm:      8
                                         Judge:     Hon. James Ware
19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.  ARGUMENT ...................................................................................................... 5

      A.    Dismissal Is Warranted Only In Extraordinary Cases ............................ 5

      B.    Mrs. di Grazia States a Valid Claim for Breach of Contract ................... 5

            1.    Sazerac's Motion Relies on Inferences Drawn In Its Favor,
                  Contrary to the Rule 12(b)(6) Standard ....................................... 6

            2.    Sazerac's Motion Ignores Its Commitment to Use Best Efforts ................ 7

      C.    Mrs. di Grazia States a Valid Claim for Breach of the Implied Covenant of
            Good Faith and Fair Dealing ................................................................... 10

      D.    Mrs. di Grazia States a Valid Claim for Unjust Enrichment ................... 11

            1.    It Does Not Matter Whether The Cause of Action Is Styled as
                  "Unjust Enrichment" or as "Restitution," "Quasi-contract" or
                  "Quantum Meruit" ...................................................................... 11

            2.    Mrs. di Grazia Has Alleged Facts Sufficient To Support a Claim for
                  Unjust Enrichment, Restitution or Quasi-contract ....................... 13

      E.    Mrs. di Grazia States a Valid Claim for Breach of the Implied Covenant to
            Continue Purchasing Herradura Brands ................................................. 15

      F.    Mrs. di Grazia States a Valid Claim for Third-Party Beneficiary Rights ............. 18

IV.   CONCLUSION ................................................................................................. 19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i                    OPPOSITION TO MOTION TO DISMISS
                     COMPLAINT (5:08-CV-01562 JW)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andrews v. Mobil Aire Estates*,
125 Cal. App. 4th 578 (2005) ............................................................. 10

*Bloor v. Falstaff Brewing Corp.*,
454 F. Supp. 258 (S.D.N.Y. 1978), *aff'd*, 601 F.2d 609 (2d. Cir. 1979) ...................... 8, 9, 16

*California Emergency Physicians Med. Group v. PacifiCare of California*,
111 Cal. App. 4th 1127 (2003) ...................................................... 12, 13, 14

*Carlson Distributing Co. v. Salt Lake Brewing Co.*,
95 P.3d 1171 (Utah Ct. App. 2004) .................................................. 9

*Cates Constr. v. Talbot Partners*,
21 Cal. 4th 28 (1999) ............................................................. 8

*Central Building, LLC v. Cooper*,
127 Cal. App. 4th 1053 (2005) ...................................................... 8

*College Block v. Atlantic Richfield Co.*,
206 Cal. App. 3d 1376 (1988) ................................................ 10, 11, 17

*Columbia Natural Resources, Inc. v. Tatum*,
58 F.3d 1101 (6th Cir. 1995) ...................................................... 5, 6

*Conley v. Gibson*,
355 U.S. 41 (1957) ............................................................. 5, 13

*Corsican Productions v. Pitchess*,
338 F.2d 441 (9th Cir. 1964) ...................................................... 5

*Cousins Investment Co. v. Hastings Clothing Co.*,
45 Cal. App. 2d 141 (1941) ................................................... 10, 11, 16

*First Nationwide Savings v. Perry*,
11 Cal. App. 4th 1657 (1992) ................................................. 12, 13, 14

*Gilligan v. Jamco Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) ...................................................... 5

*Graehling v. Village of Lombard, Ill.*,
58 F.3d 295 (7th Cir. 1995) ...................................................... 5

*Haddock v. Board of Dental Examiners of Calif.*,
777 F.2d 462 (9th Cir. 1985) ...................................................... 5, 13

*Hedging Concepts, Inc. v. First Alliance Mortgage Co.*,
41 Cal. App. 4th 1410 (1996) ...................................................... 15

*Kransco v. American Empire Surplus Lines Ins. Co.*,
23 Cal. 4th 390 (2000) ............................................................. 10

*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) ...................................................... 12

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ...................................................... 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

1

## TABLE OF AUTHORITIES
**(continued)**

2

Page

3

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ............................................... 12

4

*Souza v. Westlands Water Dist.*,
135 Cal. App. 4th 879 (2006) ............................................... 18

5

6

*United States v. Redwood City*,
640 F.2d 963 (9th Cir. 1981)................................................ 5, 7

7

### STATUTES

Cal. Comm. Code § 2306(2) ...................................................... 16

8

Federal Rules of Civil Procedure, Rule 8.................................. 5

9

Federal Rules of Civil Procedure, Rule 12(b)(6) ................................. 5, 6, 7

10

### OTHER AUTHORITIES

California Law of Contracts § 11.66 (Cal. CEB 2007)...................... 12

11

Rest. 1st Restitution § 1 ........................................................ 14

12

Rest. 1st Restitution, Gen'l Scope Note.................................... 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

iii

OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

## I.    **INTRODUCTION**

Deborah di Grazia's Complaint in this matter seeks compensation due to her under an agreement between her late husband, Loris di Grazia, and defendant Sazerac Company, Inc. ("Sazerac"). In short, Sazerac received valuable rights from Mr. di Grazia and now seeks to avoid making full payment for those rights.

In 1991, Mr. di Grazia brokered a very lucrative deal for defendant Sazerac Company, Inc. ("Sazerac"), whereby Sazerac became the exclusive importer and distributor for Tequila Herradura, S.A. ("Herradura") in the United States. Mr. di Grazia was key to Sazerac's success in winning the distributorship, because of his close personal ties to Herradura's president and because it was Mr. di Grazia himself who at that time held the exclusive right to import and distribute the Herradura brand in the United States. In return for Mr. di Grazia's crucial assistance, Sazerac committed to paying Mr. di Grazia a share of all the profit it received from distributorship rights over at least the initial term of the agreements, which ends in 2012. Sazerac further committed to notify Mr. di Grazia of any termination of its contract with Herradura. Sazerac did neither of these things.

Instead, Sazerac cut a secret deal whereby it monetized the valuable distribution rights it had received without making the agreed-upon payments. Sazerac claims that there is no problem with this side-stepping of the intent of the parties, which was that Mr. di Grazia or his successor be fully and fairly compensated for his unique contribution to Sazerac's business. Mrs. di Grazia alleges on information and belief, and Sazerac does not dispute, that Sazerac voluntarily relinquished its distribution rights in exchange for a handsome lump-sum payment, the amount of which was based on Sazerac's anticipated purchases and sales through at least 2012—purchases on which Sazerac owed Mrs. di Grazia a share. Sazerac claims, however, that it does not owe any of this windfall to Mrs. di Grazia, because, according to Sazerac, its payments to Mrs. di Grazia are conditioned on "purchases," and Sazerac gave up the right to make purchases.

Sazerac's argument ignores the terms of the relevant contracts and applicable law. Indeed, it seems Sazerac wrote its Motion with blinders on. Critically, Sazerac ignores the "best efforts" provision of its contracts in which it committed to use its "best efforts" to promote and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                                   1                    OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

1   maintain sales of the Herradura Brands.  Instead of using its best efforts to maintain sales, Sazerac

2   voluntarily relinquished its right to make sales altogether, reaping what Mrs. di Grazia believes is

3   a significant profit thereby.  Sazerac further ignores clear legal precedent to the effect that

4   Sazerac had a duty under the best efforts provision to choose a course of action that would bring

5   the most profit to Mrs. di Grazia.  In addition, Sazerac ignores applicable equitable principles,

6   whether termed "unjust enrichment," "restitution," or "quasi-contract," that mandate that Mrs. di

7   Grazia be paid her share of the full value that Sazerac realized from its deal with her late husband.

8           In sum, Mrs. di Grazia's Complaint alleges facts sufficient to support her claims

9   and Sazerac's Motion should be denied.

10  **II.    STATEMENT OF FACTS**

11          This dispute involves compensation due to the plaintiff, Deborah di Grazia

12  (hereinafter, "Plaintiff" or "Mrs. di Grazia"), from defendant, Sazerac Company, Inc. (hereinafter,

13  "Sazerac" or "Defendant"), pursuant to a written agreement between Mrs. di Grazia's deceased

14  husband, her predecessor in interest, and Sazerac.  Complaint ¶ 1 (*see* Docket No. 1).

15          Mr. di Grazia was in the business of importing and distributing distilled spirits in

16  the United States for many years, including the importation and distribution of tequila produced

17  and bottled by  Tequila Herradura, S.A. ("Herradura").  Herradura is a Mexican corporation that

18  produces, bottles and exports tequila known under the names Herradura Gold, Herradura Silver,

19  Herradura Anejo and other brands (collectively referred to as "Herradura Brands").  *Id*. ¶13.

20          In 1981, Mr. di Grazia was appointed the exclusive United States representative of

21  Herradura, for the importation and distribution of the Herradura Brands.  *Id*. ¶¶ 2, 14.  Over the

22  years, and from time to time, Mr. di Grazia would broker agreements with domestic liquor

23  distributors to which he would resign his exclusive representation of Herradura and permit those

24  entities to become Herradura's U.S. distributor.  *Id*. ¶2.  The distributors would pay Mr. di Grazia

25  for his assistance and the relinquishment of his rights.  *Id*. ¶2.  In each instance, when those

26  agreements terminated, Mr. di Grazia's exclusive representation rights would revert to him.  *Id*.

27  ¶2.

28          The most recent entity to benefit from such an agreement was Sazerac.  *Id*. ¶3.  In

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                    2            OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

and around October 1991, Sazerac desired to become the exclusive importer, seller, marketer and distributor of the Herradura Brands. *Id.*, Ex. A (Agreement at 1). As a result, Sazerac enlisted the assistance of Mr. di Grazia. On October 21, 1991, Mr. di Grazia memorialized an agreement with Sazerac whereby Mr. di Grazia facilitated Sazerac's negotiations with Herradura (the "Agreement").[1] *Id.* ¶15. A copy of the Agreement is attached to the Complaint as Exhibit A and is incorporated therein by reference. Pursuant to that Agreement, Mr. di Grazia promised to use his "best efforts" to facilitate negotiations between Sazerac and Herradura for a distribution agreement and to assist the companies to reach, execute and deliver an agreement. *Id.* Ex. A (Agreement ¶1(a)).

Also pursuant to the Agreement, Mr. di Grazia promised to relinquish his valuable rights as the exclusive representative of Herradura in the United States if he were successful in negotiating the distribution agreement between Herradura and Sazerac. *Id.* ¶15, Ex. A (Agreement at 1).[2] In return for Mr. di Grazia's assistance and his relinquishment of exclusive rights, Sazerac promised to pay Mr. di Grazia an initial payment, plus subsequent payments to continue at least until the expiration of the initial term of the contemplated distribution agreement between Herradura and Sazerac. *Id.* ¶15, Ex. A (Agreement ¶ 2, 3).

Indeed, Mr. di Grazia was successful, and Sazerac entered into the desired exclusive distribution agreement with Herradura (the "Definitive Agreement"). A copy of the Definitive Agreement is attached to the Complaint as Exhibit B, and is incorporated therein by reference. The initial term of the Definitive Agreement is 20 years, which does not expire until January 1, 2012. *Id.* Ex. B (Definitive Agreement ¶5). As a result, Sazerac has a duty to make payments to Mr. di Grazia pursuant to ¶2(a) of the Agreement at least until the year 2012.

Further, under the terms of the Definitive Agreement, Sazerac is obliged to "use its best efforts to import, sell, market and distribute the Brands in the Territory," with such efforts

---

[1] Defendant mistakenly refers to this Agreement as the "Royalty Agreement," although the document is not so titled and the word "royalty" does not appear anywhere in the Agreement. *See* Section III.E., *infra*.

[2] Mr. di Grazia retained the reversion of his exclusive representation rights should the Agreement terminate. *See id.* ¶12.

"directed toward establishing and maintaining the Brands as premium products in the distilled spirits industry." *Id.* Ex. B (Definitive Agreement, ¶2(a)).  Sazerac's duties to pay Mr. di Grazia for his assistance and relinquishment of rights are also incorporated explicitly into the Definitive Agreement.  *Id.* Ex. B (Definitive Agreement ¶3(a)).

For approximately fifteen years, Sazerac made regular payments to Mr. di Grazia pursuant to the terms of the Definitive Agreement and the Agreement (collectively the "Agreements").  *Id.* ¶¶4, 17.  In February 2006, Mr. di Grazia passed away.  *Id.* ¶18.  Mrs. di Grazia succeeded to Mr. di Grazia's rights under the terms of the Agreements and continued to receive payments from Sazerac pursuant to the terms of the Agreements.  *Id.* ¶¶ 4,18.  Without notice, however, in late 2006, with six years left in the initial term of the Definitive Agreement, Sazerac stopped making payments to Mrs. di Grazia.  *Id.* ¶¶ 5, 20.  Mrs. di Grazia contacted Sazerac, but Sazerac refused to explain why it had stopped making payments.  *Id.* ¶¶5, 20.  Eventually, after further questioning, Sazerac answered Mrs. di Grazia by telling her that it had stopped making payments because it had voluntarily given up its distribution rights of Herradura Brands and was no longer making purchases of Herradura Brands.  *Id.* ¶¶ 19, 20.  Therefore, Sazerac considered itself no longer obligated by the Agreement.  *Id.* ¶20.

At some point in 2006, Herradura was acquired by Brown-Forman Corp. ("Brown-Forman"), which is a producer and distributor of spirits.  *Id.* ¶19.  Mrs. di Grazia is informed and believes that either Brown-Forman or Herradura and Sazerac entered into an agreement whereby Sazerac voluntarily gave up its rights to distribute Herradura Brands in the United States.  *Id.* ¶¶ 19, 20.  Mrs. di Grazia further believes that in exchange for giving up those rights, Sazerac received a substantial payment from either Brown-Forman or Herradura based on the profits Sazerac anticipated realizing from the sale of Herradura Brands it expected to purchase through the remaining term of the Definitive Agreement.  *Id.* ¶19.

Before filing this litigation, Mrs. di Grazia asked for relevant information about the Brown-Foreman/Sazerac transaction, and specifically asked how much Sazerac was paid to relinquish its rights and how that payment was calculated.  But Sazerac has refused to provide Mrs. di Grazia with any information about the transaction.  Mrs. di Grazia suspects that the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

90015002.6                            4                    OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

payment to Sazerac was based on an estimate of the profits that Sazerac would realize from its anticipated purchase and sale of the Herradura Brands during at least the remaining six year of the initial term of the Definitive Agreement—purchases upon which Mrs. di Grazia was due to be paid. In this action, Mrs. di Grazia seeks her due share of Sazerac's profits. *Id.* ¶6.

## III.  ARGUMENT

### A.  Dismissal Is Warranted Only In Extraordinary Cases

In testing the sufficiency of Mrs. di Grazia's complaint against a Rule 12(b)(6) challenge, the Court must assume that all of the plaintiff's allegations are true and further, must construe those allegations in a light most favorable to Mrs. di Grazia and draw all reasonable inferences in her favor. *See United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Dismissal is appropriate only if it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The test is whether the facts, as alleged, support any valid claim entitling plaintiff to relief, not necessarily the one intended by plaintiff. Thus, a complaint should not be dismissed because plaintiff relies on the wrong legal theory if the facts alleged support any valid legal theory. *See Haddock v. Board of Dental Examiners of Calif.*, 777 F.2d 462, 464 (9th Cir. 1985).

This standard, read in conjunction with the notice pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, , establishes "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). The law deliberately sets forth a stringent standard for dismissal under Rule 12(b)(6), and as a result, "it is only in the extraordinary case in which dismissal is proper." *Corsican Productions v. Pitchess*, 338 F.2d 441, 442 (9th Cir. 1964); *see also Redwood City*, 640 F.2d at 966. This is not such a case.

### B.  Mrs. di Grazia States a Valid Claim for Breach of Contract

Mrs. di Grazia has stated a claim for breach of contract because her Complaint sets

1   forth facts showing that Sazerac had a contractual duty to use its best efforts to make the

2   purchases that would benefit her, and that it did not do so.

3          Sazerac's motion to dismiss Mrs. di Grazia's breach of contract claim is based

4   solely on a purported failure to allege that Sazerac failed to do something that it was obliged to

5   do.  MTD at 8:13-20.  "Specifically," Sazerac says, "plaintiff does not and cannot claim that the

6   express condition required for Sazerac's performance—'purchases' of Herradura products by

7   Sazerac—took place as required by the Royalty Agreement."  *Id.* at 8:20-22.  This argument

8   forms the basis for Sazerac's *entire* Motion, and it fails for at least two reasons: first, because it

9   draws inferences from the contract language not allowable on a motion to dismiss; and second,

10  because it ignores Sazerac's duty to use its best efforts to sell the Herradura Brands, which sales

11  would result in purchases and payments to Mrs. Di Grazia.  By giving up its rights to sell the

12  Herradura Brands, Sazerac has breached this duty.

13          **1.      Sazerac's Motion Relies on Inferences Drawn In Its Favor, Contrary
                       to the Rule 12(b)(6) Standard**

14

15          First, Sazerac purports to rely only on the plain language of the Agreements, but as

16  Sazerac's misnaming of the Agreement[3]  between di Grazia and Sazerac attests, Sazerac is not

17  confining its argument to the plain language by any means.  For one thing, Sazerac stresses that

18  payments to the di Grazias were expressly conditioned on its purchases of the Herradura brands.

19  But there is no such language in the Agreements.  When the parties to this contract wanted to

20  make something a "condition," they used clear language to that effect.  *See*, *e.g.*, Complaint, Ex.

21  A (Agreement ¶3 (entitled "Condition" and providing that "obligations . . . shall be subject to and

22  conditioned upon the execution . . .")).  No similar language attaches to Sazerac's duty to make

23  payments to Mr. di Grazia.  As a result, Sazerac has identified, at best, a question for discovery:

24  whether the parties intended payments to be conditioned on purchases.  Sazerac is not entitled to

25  have this question answered in its favor on a Motion to Dismiss.  *See Columbia Natural*

26  *Resources*, 58 F.3d at 1109.

27

28  ———————————
    [3]  Sazerac's reference to the Agreement as a "Royalty Agreement" is conjured out of thin air.  *See*
    note 1, *supra*, and Section III.D, *infra*.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                          6                OPPOSITION TO MOTION TO DISMISS
                                                     COMPLAINT (5:08-CV-01562 JW)

Further, Sazerac relies on paragraph 2(a)(ii) of the Agreement which provides that if the Sazerac distributorship is terminated before the end of 1998, Mr. di Grazia would not receive any guaranteed amount, but would instead receive only the amount to which he was entitled up to the date of termination. Complaint, Ex. A (Agreement ¶2(a)(ii)). Sazerac argues that this provision demonstrates that the parties did not intend for Mr. di Grazia to receive any payments if Sazerac terminated the Definitive Agreement, but of course, that is not what the provision says. On the contrary, because the provision applies only to the pre-1999 period, the most reasonable inference is that the parties intended that after 1998, Sazerac's obligation to pay Mr. di Grazia would continue notwithstanding a termination of the distributorship. In testing the sufficiency of Mrs. di Grazia's Complaint against Sazerac's Rule 12(b)(6) challenge, the Court must assume that all of Mrs. di Grazia's allegations are true and further, must construe those allegations in a light most favorable to Mrs. di Grazia and draw all reasonable inferences in her favor. *See Redwood City*, 640 F.2d at 966. As a result, to the extent Sazerac's Motion requires the Court to draw inferences from the language of the Agreements, those inferences must be in Mrs. di Grazia's favor, and they do not lead to a dismissal.

## 2.    Sazerac's Motion Ignores Its Commitment to Use Best Efforts

Second, Sazerac's Motion wholly ignores its duty and commitment to use its best efforts to sell the Herradura Brands. Rather than use its best efforts to make sales of the Herradura Brands, Sazerac sold the rights themselves and thinks that this clever trick absolves it of all responsibility to Mrs. di Grazia. Sazerac is wrong.

As explained above, on the same day that Sazerac and Mr. di Grazia memorialized the Agreement, Sazerac and Herradura signed the interdependent Definitive Agreement. These two contracts are "interdependent" in that they refer to and rely upon each other at many points. For example, the Definitive Agreement explicitly incorporates Sazerac's duties to pay Mr. di Grazia for his assistance and relinquishment of rights, while the Agreement is wholly conditioned upon the successful negotiation of the Definitive Agreement—the engineering of which, of course, depended critically on the good efforts of Mr. di Grazia. Complaint, Ex. B (Definitive Agreement ¶3 (setting forth payment duties to di Grazia)), Ex. A (Agreement ¶ 1 (referencing

Definitive Agreement)). As such, the two contracts must be read together in order to understand the rights, obligations and expectations of the parties. *See*, *e.g.*, *Cates Constr. v. Talbot Partners*, 21 Cal. 4th 28, 40 (1999) (when one written instrument "incorporates another contract by an express reference thereto," they "should be read together and construed fairly and reasonably as a whole according to the intention of the parties"); *Central Building, LLC v. Cooper*, 127 Cal. App. 4th 1053, 1058 (2005) ("when a party undertakes to guarantee the faithful performance of another contract," the contracts must be read together because "the guarantor is contracting in reference to the other contract").

Per Paragraph 2 of the Definitive Agreement, Sazerac was obliged to "use its best efforts to import, sell, market and distribute the Brands in the Territory," with such efforts "directed toward establishing and maintaining the Brands as premium products in the distilled spirits industry." Complaint, Ex. B (Definitive Agreement ¶ 2). The leading case interpreting the obligation imposed by the phrase "best efforts" is *Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258 (S.D.N.Y. 1978), *aff'd*, 601 F.2d 609 (2d. Cir. 1979). In *Bloor*, the Falstaff Brewing Corporation had bought the brewing labels, trademarks, accounts receivable, distribution systems, and other property of a brewery called Ballantine & Sons, and had agreed to pay Ballantine trustee Bloor a percentage of the profits from the sales of Ballantine Ale. *Bloor*, 454 F. Supp. at 260-61. When sales started to sink, Falstaff did little to buoy them, despite having agreed in the contract to use "best efforts" to promote and maintain sales. *Id.* After noting that "'best efforts' is a term which necessarily takes its meaning from the circumstances," the district court held that, in the context of an exclusive right to distribute an alcoholic beverage, the term meant "such effort as in the exercise of sound judgment would be likely to produce the most profitable results to the promisee in view of the nature of the business and the extent of the territory over which it was to be conducted." *Id.* at 266, 271 (quotations omitted). Finding that Falstaff had breached the contract's "best efforts" clause by not taking efforts as would produce the most profitable results for the party relying on its promise to take best efforts, the district court held Falstaff liable for damages in the amount necessary to put the plaintiff in the position he would have been in had the best efforts clause been observed. *Id.* at 277.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

90015002.6

8

OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

1    Under *Bloor*, in the context of a contractual promise to take best efforts to promote

2  liquor sales, the promisor cannot put its own interests above those of the promisee; rather,

3  whatever course of action would bring the most profit to the promisee *must take precedence*.

4  *Bloor*, 454 F. Supp. at 271.  *See also Carlson Distributing Co. v. Salt Lake Brewing Co.*, 95 P.3d

5  1171 (Utah Ct. App. 2004) (following *Bloor*; holding that distributor bound by best efforts clause

6  in contract for distribution of beer "agrees to do the best that it can regardless of the capabilities

7  of others").  In this case, Mrs. di Grazia is in the same position as the plaintiff in *Bloor*.  Her

8  predecessor in interest, Mr. di Grazia, was the promisee of Sazerac's promise to take best efforts

9  to import, sell, market and distribute the Herradura Brands, because (1) he helped secure the

10  promise, (2) the Definitive Agreement could not have existed without the promise, which means

11  that the Agreement itself could not have existed without the promise, and (3) he relied on the

12  promise, *because it was only the best efforts by Sazerac that would enable Mr. di Grazia to*

13  *realize the value of the Agreement*.  The "best efforts" clause, thus, was an essential requirement.

14    In short, Sazerac's argument reduces to the claim that its only duty under the

15  Agreement was to pay Mr. or Mrs. di Grazia if it happened to make purchases of Herradura

16  Products during the term of the Definitive Agreement.  As Sazerac puts it: "Sazerac either made

17  'purchases' from Herradura or it did not.  If the former, Sazerac may owe royalties to the

18  plaintiff; if the latter, Sazerac owes nothing to plaintiff."  MTD at 10:10-11.  This is false.

19  Sazerac owed Mrs. di Grazia the duty to exert its best efforts to make sales of Herradura Brands,

20  and breached that duty by abandoning its right to make such sales in exchange for a lump-sum

21  payment, which it now contends it does not have to share with Mrs. di Grazia.[4]  As a result, Mrs.

22  di Grazia has alleged facts sufficient to state a claim for breach of contract, and Sazerac's Motion

23  should be denied.

---

[4] In its Motion, Sazerac quotes—and does not dispute—Mrs. di Grazia's contention that "Sazerac exited the Distribution Agreement 'voluntarily' and in exchange for a money payment from Herradura or the brand's new owner (Brown-Forman Corp.)."  MTD at 15:16-17.

1

**C.     Mrs. di Grazia States a Valid Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

2

3      Mrs. di Grazia has also stated a claim for breach of the implied covenant of good

4      faith and fair dealing because her Complaint sets forth facts showing that Sazerac has willfully

5      injured her right to receive the benefits of the Agreement.

6      In California, "[t]here is an implied covenant of good faith and fair dealing in

7      every contract that neither party will do anything which will injure the right of the other to receive

8      the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal. 4th

9      390, 400 (2000).  This covenant imposes a duty on each party to do everything that the contract

10     presupposes that they will do to accomplish its purpose. *See Andrews v. Mobil Aire Estates*, 125

11     Cal. App. 4th 578, 589 (2005).  In this case, the Agreement's purpose was to enrich all parties

12     through the transfer of valuable rights from Mr. di Grazia to Sazerac for a specified term, with

13     Mr. di Grazia and then Mrs. di Grazia to profit through Sazerac's exercise of those rights.

14     Sazerac injured Mrs. di Grazia's right "to receive the benefits of the agreement" when it

15     monetized its rights by selling them to Brown-Forman, and failed to pay Mrs. di Grazia any

16     portion of the proceeds.

17     In response to Mrs. di Grazia's claim for breach of the implied covenant of good

18     faith and fair dealing, Sazerac first argues that the Complaint does not state a claim because of,

19     once again, Mrs. di Grazia's purported failure to allege that Sazerac failed to do something that it

20     was obliged to do.  MTD at 10:22-11:10.  This argument is analyzed and rejected above, because

21     Mrs. di Grazia has alleged that Sazerac failed to carry out its duty to use its best efforts to make

22     purchases of Herradura.  *See* Section III.A., *supra*.

23     Sazerac then argues that the Complaint does not state a claim on this point because

24     "the covenant of good faith and fair dealing will not impose [an] additional duty to stay in

25     business" when a "substantial minimum payment" has been made by the obligor.  MTD at 11:11-

26     19.  In support of this rule, Sazerac cites *Cousins Investment Co. v. Hastings Clothing Co.*, 45

27     Cal. App. 2d 141 (1941), and *College Block v. Atlantic Richfield Co.*, 206 Cal. App. 3d 1376

28     (1988).

Sazerac's argument, however, finds no purchase on this cause of action.  First, in *neither* of the cases cited by Sazerac did the court consider any issue related to the covenant of good faith and fair dealing.  Rather, in both of these cases, the plaintiffs argued for an implied covenant of continued operation—a different claim relating to a distinct covenant.  *See Cousins Investment Co.*, 45 Cal. App. 2d at 149; *College Block*, 206 Cal. App. at 1379 n.2.  Because these cases do not address the covenant of good faith and fair dealing, they do not support Sazerac's argument.[5]

Furthermore, even if Mrs. di Grazia's claim that Sazerac breached the covenant of good faith and fair dealing could be construed as a claim that Sazerac breached a "duty to stay in business"—an interpretation, again, not supported by the cases Sazerac cites or the facts alleged—Sazerac's cases are readily distinguishable.  In neither case was the defendant paid a money to go out of business. By contrast, if we construe Sazerac's voluntary relinquishment of its rights to purchase Herradura Brands as a sort of going-out-of-business, then in this case Mrs. di Grazia alleges that Sazerac *was* paid a substantial amount of money to go out of business—and to Mrs. di Grazia's detriment.

In short, Mrs. di Grazia has clearly set forth facts showing that Sazerac willfully injured her right to receive the benefits of the Agreements, and Sazerac's arguments fail to show any defect in this cause of action.  Sazerac's Motion should be denied.

### D.     Mrs. di Grazia States a Valid Claim for Unjust Enrichment

Mrs. di Grazia has stated a claim for unjust enrichment because she has set forth facts showing that Sazerac has enriched itself at her expense.

#### 1.     It Does Not Matter Whether The Cause of Action Is Styled as "Unjust Enrichment" or as "Restitution," "Quasi-contract" or "Quantum Meruit"

In response to Mrs. di Grazia's "unjust enrichment" cause of action, Sazerac first makes the formalistic and unfounded objection that California does not recognize the cause of

---

[5]  However, the rule on continued operations and substantial minimum payments is relevant to—and supports—Mrs. di Grazia's claim for breach of the implied covenant to continue purchasing Herradura Brands.  *See* Section III.E., *infra.*

1   action.  MTD at 12:2-3.  On the contrary, California case law does recognize unjust enrichment as

2   a cause of action.  *See*, *e.g.*, *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1669-70

3   (1992) (reversing sustained demurrer upon finding that "[plaintiff] FNS *can* state a claim for

4   unjust enrichment" (emphasis added)).  In fact, Sazerac's Motion and supporting authority are not

5   contrary.[6]  At best, the lone authority cited by Sazerac stands merely for the proposition that a

6   claim for "unjust enrichment" may be more aptly called a claim for restitution or quasi-contract.

7   *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003) ("[unjust enrichment] is

8   synonymous with restitution").  The court in *Melchior* characterized unjust enrichment as "a

9   general principle, underlying various legal doctrines and remedies, rather than a remedy itself."

10  *Id.* (internal quotations and citations omitted).[7]

11      As a result, even though the title "unjust enrichment" may be considered by some

12  courts to be inaccurate, as the *Melchior* court commented in *dicta*, the essential claim still stands

13  under another label, such as restitution or quasi-contract.  California Law of Contracts § 11.66

14  (Cal. CEB 2007).  "Quasi-contract, unjust enrichment, and restitution are interrelated aspects of

15  the same legal principle.  Quasi-contract is a legal theory that provides a right of restitution as a

16  remedy for unjust enrichment."  *Id.*  Accordingly, if a California court determines that an "unjust

17  enrichment" cause of action is better construed as a "restitution" or "quasi-contract" cause of

18  action, the court may simply consider the cause of action under the appropriate terminology or

19  may allow a party to amend its pleading.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 387-

20  88 (2004) (construing "purported cause of action for unjust enrichment as an attempt to plead a

21  cause of action giving rise to a right to restitution"); *see also California Emergency Physicians*

22  *Med. Group v. PacifiCare of California*, 111 Cal. App. 4th 1127, 1136 (2003) (construing "claim

23

24  [6] In fact, Sazerac's own Motion admits that California *does* recognize an unjust enrichment cause
    of action, and cites a case to this effect:  "Generally, an unjust enrichment claim is only
25  appropriate where a party obtains a benefit that it may not justly retain."  MTD at 12:12-15 (citing
    *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

26
27  [7] Moreover, *Melchior* is not controlling here because the court's discussion of unjust enrichment
    is *dicta* (the claim having been preempted by the Copyright Act), and the decision is not based on
28  the pleadings alone, but is a summary judgment decision based on a complete evidentiary record.
    *Id.* at 794.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

90015002.6                              12                  OPPOSITION TO MOTION TO DISMISS
                                                            COMPLAINT (5:08-CV-01562 JW)

1  for quantum meruit" as equivalent to "restitution" and "quasi-contract"). Thus, California courts

2  do not dismiss an "unjust enrichment" cause of action simply because it should have borne the

3  label "restitution" or "quasi-contract."

4       Here, Mrs. di Grazia properly labeled her claim as one for "unjust enrichment."

5  *Cf. First Nationwide Savings*, 11 Cal. App. 4th at 1669-70. To the extent the Court determines

6  that the claim is better labeled as one for "restitution" or "quasi-contract," however, Mrs. di

7  Grazia should be given an opportunity to file an amended complaint. *See Conley*, 355 U.S. at 45-

8  46 (dismissal appropriate only if plaintiff can prove no set of facts entitling her to relief);

9  *Haddock*, 777 F.2d at 464 (complaint should not be dismissed if facts alleged support any valid

10  legal theory).

11       **2.    Mrs. di Grazia Has Alleged Facts Sufficient To Support a Claim for**

12                 **Unjust Enrichment, Restitution or Quasi-contract**

13       Sazerac continues its response to Mrs. di Grazia's cause of action for unjust

14  enrichment by arguing that even if California does recognize such a cause of action, Mrs. di

15  Grazia has not alleged facts to support one in this case because she "does not allege what is

16  'unjust' about Sazerac receiving payment 'in exchange for voluntarily giving up rights to

17  distribute Herradura brands in the United States.'" MTD at 6-8 (*quoting* Complaint ¶31). This

18  objection makes sense only if one sees nothing unjust in Sazerac devising a way to monetize the

19  rights it received from Mr. di Grazia under the Agreement in such a way as to avoid sharing the

20  value thereof with Mrs. di Grazia, contrary to the terms of the Agreement.

21       On the contrary, Mrs. di Grazia has satisfied her pleading burden of alleging facts

22  that support a valid equitable claim, be it unjust enrichment, restitution, quasi-contract or

23  quantum meruit, all of which are interrelated legal principles giving rise to a valid cause of action.

24  "Quantum meruit refers to an obligation created by the law without regard to the intention of the

25  parties in 'situations in which one person is accountable to another on the ground that otherwise

26  he would unjustly benefit or the other would unjustly suffer loss.'" *California Emergency*

27  *Physicians*, 111 Cal. App. 4th at 1136 (quoting Rest. 1st Restitution, Gen'l Scope Note). "The

28  phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6            13          OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

1   restitution of or for property or benefits received under such circumstances as to give rise to a

2   legal or equitable obligation to account therefor." *Id.* (quotations omitted).  "The person

3   receiving the benefit is required to make restitution only if the circumstances are such that, as

4   between the two individuals, it is *unjust* for the person retain it." *First Nationwide Savings*, 11

5   Cal. App. 4th at 1663 (citing Rest. 1st Restitution § 1) (emphasis in original).

6          Whether retention is "unjust" depends primarily upon what the retaining party

7   knew or ought to have known.  For example, in *First Nationwide Savings*, defendant Sunrise

8   Trust bought a piece of real property that was subject to a prior deed of trust held by plaintiff First

9   Nationwide Savings ("FNS").  *Id.* at 1661.  Later that year, the trustee of the FNS deed of trust

10  mistakenly reconveyed the deed, thereby converting Sunrise into a nonassuming grantee and

11  eliminating FNS's status as beneficiary of the deed of trust.  *Id.*  At the end of the year, Sunrise

12  sold the property to a third party.  *Id.*  Given the reconveyance, FNS did not receive any money;

13  rather, Sunrise kept it all.  *Id.*  The appellate court found that Sunrise "*arguably knew or should*

14  *have known it did not own all of the property*," but "[n]onetheless . . . . sold the property and

15  pocketed all of the proceeds." *Id.* at 1671 (emphasis added).  Reversing the sustained demurrer,

16  the court held that FNS could state a cause of action for unjust enrichment—indeed, that these

17  facts "may prove to be a classic case of unjust enrichment."  *Id.*

18         Mrs. di Grazia's case resembles *First Nationwide Savings* in key respects.  Both

19  Sunrise and Sazerac had valuable assets: Sunrise had the ownership interest in the real property,

20  while Sazerac had the importation and distribution rights it had received from di Grazia.

21  Similarly, neither Sunrise nor Sazerac was free to *wholly* retain the economic benefits of their

22  rights: Sunrise's interest in the real property was subject to that of FNS, while Sazerac had to

23  make payments to Mr. di Grazia based on the exercise of its importation and distribution rights.

24  Finally, both Sunrise and Sazerac nonetheless tried to wholly retain those economic benefits:

25  Sunrise took advantage of a conveyancing error to keep money it otherwise would have owed to

26  FNS, while Sazerac has sold its importation and distribution rights to a third party, in order to

27  keep that portion of their value Sazerac would have owed to Mrs. di Grazia had it exercised those

28  rights *itself*.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

90015002.6                    14            OPPOSITION TO MOTION TO DISMISS
                                            COMPLAINT (5:08-CV-01562 JW)

In short, Sazerac received valuable rights from Mrs. di Grazia's deceased husband. In consideration of those rights, Sazerac was to pay a portion of its profits on those rights to Mr. di Grazia and then, upon his death, to Mrs. di Grazia. Sazerac has extracted the full value its rights, but has not paid the appropriate portion thereof to Mrs. di Grazia. This smacks of unjust enrichment.[8]

Finally, Sazerac reprises its argument that Sazerac had no duty to Mr. di Grazia, and to Mrs. di Grazia as his successor in interest. MTD 12:11-20. On the contrary, Sazerac had a duty to use its best efforts to make purchases, and therefore sales, of the Herradura Brands, which efforts would result in Mr. and Mrs. di Grazia realizing the value of Mr. di Grazia's agreement to relinquish the exclusive distribution rights to Sazerac and to broker the agreement with Herradura. *See* Section III.A., *supra.* As a result, Mrs. di Grazia states a valid claim for unjust enrichment and Sazerac's Motion should be denied.

### E.    Mrs. di Grazia States a Valid Claim for Breach of the Implied Covenant to Continue Purchasing Herradura Brands

Mrs. di Grazia has stated a claim for breach of an implied covenant to continue purchasing Herradura Brands because she has set forth facts showing that such a covenant is indispensable to effectuate the intent of the parties to the Agreement.

Under California law, five conditions must exist for an implied covenant to be found: (1) the implication must arise from the language used or it must be indispensable to effectuate the intent of the parties; (2) it must appear from the language used that it was so clearly

---

[8] Sazerac might attempt to invoke the rule that an action in quasi-contract does not lie when there is a valid express contract covering the same subject matter. However, this rule derives from cases in which plaintiffs sought payment for contract-related services, *despite having failed to perform a condition precedent to their right to be paid. See, e.g., Hedging Concepts, Inc. v. First Alliance Mortgage Co.,* 41 Cal. App. 4th 1410, 1419-20 (1996) (financial consultant could not get quantum meruit payment when his contract with defendant was contingent upon successful securitization, which contingency had not occurred). It makes sense to deny restitution in such cases because the plaintiff had not conferred the contracted-for benefit. This case is in stark contrast. Here, the plaintiff *has* conferred the contracted-for benefit—namely, the opportunity for Sazerac to profit by the importation and distribution of Herradura Brands. Moreover, the defendant *has* benefited. Sazerac just sidestepped its contractual duty to pay Mrs. di Grazia her fair share.

1   within the contemplation of the parties that they deemed it unnecessary to express it; (3) it must

2   be legally necessary; (4) it must be rightfully assumed that the covenant would have been made

3   had attention been called to the need for it; and (5) the subject of the covenant must not be

4   completely covered by the contract.  *See Cousins Investment Co*., 45 Cal. App. 2d at 149.

5            Sazerac disputes that the first condition is satisfied.  Specifically, Sazerac claims

6   that Mrs. di Grazia "cannot plead facts to support the claim that the allegedly implied term is

7   'indispensable' to effectuate the intent of the parties when . . . [t]he Royalty Agreement sets forth

8   different payment mechanisms for different time periods: an initial payment, a guaranteed

9   payment of $2,000,000, and last, payment as long as Sazerac continues to purchase products from

10  Herradura."  MTD at 13:22-26.  Thus, Sazerac's argument reduces to the claim that a covenant to

11  continue purchasing Herradura Brands cannot be "indispensable" to effectuate the intent of the

12  parties to the Agreement when the Agreement contains multiple payment mechanisms, without

13  any explanation of exactly *why* a payment schedule should preclude a covenant to continue

14  purchasing.  Sazerac simply assumes this should be obvious.

15           But this is not obvious, especially given the fact that the Agreement granted

16  Sazerac the right to be the *exclusive* importer and distributor of Herradura Brands.  "A lawful

17  agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned

18  imposes unless otherwise agreed an obligation by . . . the buyer to use best efforts to promote

19  their sale."  Cal. Comm. Code § 2306(2).  As explained above, in the context of an obligation to

20  take "best efforts" to promote liquor sales, the promisor cannot put its own interests above those

21  of the promisee; rather, whatever course of action would bring the most profit to the promisee

22  *must take precedence.  Bloor*, 454 F. Supp. at 271.  Given Sazerac's obligation to take "best

23  efforts" to promote sales of the Herradura Brands, then, it follows that an implied covenant to

24  continue purchasing the Brands for distribution is indispensable to effectuate the intent of the

25  parties.

26           Sazerac also contends in its Motion that Mrs. di Grazia cannot state a claim for

27  breach of an implied covenant to continue operations because the Agreements provided for a

28  "substantial minimum payment."  MTD at 11:12-19 (citing *Cousins Investment Co.*, 45 Cal. App.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                              16                 OPPOSITION TO MOTION TO DISMISS
                                                          COMPLAINT (5:08-CV-01562 JW)

2d at 149, and *College Block*, 206 Cal. App. 3d at 1381-82).  Under *College Block*, a covenant to continue operations will be read into a contract if, with respect to the party relying on the prospect of continued operations, the minimum payments to that party are "not substantial."  *College Block*, 206 Cal. App. 3d at 1380.  Mrs. di Grazia has stated a claim, however, because she has set forth facts showing that there was ***no minimum payment*** to her under the Agreement.  Under the Agreement, Sazerac had *no* minimum purchases, and so had *no* minimum payment obligation.  And a minimum payment obligation of nothing whatsoever is surely "not substantial."[9]  Furthermore, a determination of whether any payment is "substantial" or not requires a careful weighing of all the relevant evidence, putting the amount of any such payment in the proper context for the parties.  This is not a matter to be determined on the pleadings.

In further response to this cause of action, Sazerac implies that Mrs. di Grazia has already received $2,000,000 under the Agreement, and should be satisfied with that.  Underlying this intimation is Sazerac's manufactured nickname for the Agreement, "the Royalty Agreement."  As noted above, the term "royalty" does not appear anywhere in the Agreement.  *See* n.1, *supra*.  By calling the Agreement a "Royalty Agreement," Sazerac seems to try to associate it with contracts more conventionally understood as royalty agreements, like the royalty agreements attached to record contracts.  In these contracts, the royalty-receiving party might count itself lucky to receive anything, because the venture is inherently risky and the royalty-paying party has assumed the material risk of investment.  Sazerac's misnomer suggests that the Agreement is the same sort of arrangement, and that, therefore, Mrs. di Grazia is out of right in seeking more than the $2,000,000.  But the importation and distribution of Herradura Brands is not uncertain or

---

[9]  Sazerac apparently believes that the Agreement guaranteed Mr. di Grazia certain payments. *See*, *e.g.*, MTD at 1:26-2:3.  But Sazerac is wrong; nothing in the Agreement actually functions as such a guarantee.  For example, Sazerac thinks that paragraph 2(a)(i) of the Agreement guaranteed Mr. di Grazia $500,000.  *Id.*  But the payments under that paragraph were clearly a function of "the Seagram Inventory existing on the effective date of the Definitive Agreement."  Complaint, Ex. A (Agreement at ¶2(a)(i)).  That inventory is not guaranteed anywhere; therefore, neither are any payments tied to it.  Alternatively, Sazerac might point out, as Mrs. di Grazia has done, that the Agreement specifically notes that "the amounts of said payments [based upon purchases of the Brands by Sazerac] to di Grazia *are substantial*."  Complaint, Ex. A (Agreement at ¶1(d)(ii)).  But the "said payments" described as "substantial" are *not* required minimum payments.  Thus, this provision is not relevant to the *College Block* inquiry.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                                    17                    OPPOSITION TO MOTION TO DISMISS
COMPLAINT (5:08-CV-01562 JW)

1  risky in the way that, to continue the example, record sales are.  Rather, the evidence points the

2  opposite way: the Agreement specifically notes that "the amounts of said payments [based upon

3  purchases of the Brands by Sazerac] to di Grazia *are substantial*."  Complaint, Ex. A (Agreement

4  at ¶1(d)(ii)).   That is a statement about the quantity of revenue-generating purchases Mr. di

5  Grazia could expect.  And that statement expresses the intent of the parties on the matter of

6  purchases far more eloquently than any payment schedule does.[10]

7       Accordingly, Mrs. di Grazia has stated a claim for breach of an implied covenant

8  on the part of Sazerac to continue purchasing Herradura Brands, and Sazerac's Motion should be

9  denied.

10  **F.    Mrs. di Grazia States a Valid Claim for Third-Party Beneficiary Rights**

11       Finally, Mrs. di Grazia has stated a claim for breach of duties Sazerac owes her, in

12  her position as third-party beneficiary of the Definitive Agreement, because she has set forth facts

13  showing Sazerac and Herradura entered into the Definitive Agreement; that the Definitive

14  Agreement demonstrates a clear intent to benefit her, as successor-in-interest of her deceased

15  husband, by requiring payments to her for Sazerac's purchases of Herradura Brands; that Sazerac

16  was required under the Definitive Agreement to make the purchases that would benefit her; and

17  that it breached that duty by voluntarily relinquishing its right to make such purchases.  *See Souza*

18  *v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 891 (2006).

19       Sazerac first argues that the Complaint does not state a claim on this point because

20  "[a]lthough plaintiff has alleged that her husband was a third-party beneficiary of the [Definitive]

21  Agreement, she has not pled any facts to support equivalent status in her own right."  MTD at

22  14:24-26.  Not so.  The Complaint states plainly that Mrs. di Grazia is Mr. di Grazia's successor-

23

---

24  [10]  Also, Sazerac misconstrues Mrs. di Grazia's claim.  At first, Sazerac recognizes that she has

25  asserted the existence of an implied covenant to continue purchases of Herradura Brands.
     Toward the end of its argument, though, Sazerac seems to understand Mrs. di Grazia's argument

26  for an implied covenant to continue purchases of Herradura Brands to be an argument that the
     Agreement contained an implied term providing for "a guaranteed payment in the absence of

27  purchases by Sazerac."  MTD 13:27-28.  But this is not what Mrs. di Grazia has asserted; rather,
     she asserts that the Agreement contains an implied covenant to continue purchasing Herradura

28  Brands, as she has described, and that Sazerac has breached it.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

90015002.6                                    18                 OPPOSITION TO MOTION TO DISMISS
                                                                 COMPLAINT (5:08-CV-01562 JW)

1    in-interest under the Agreement.  *See*, *e.g.*, Complaint ¶¶1, 4, 18, and 40.  Moreover, the language

2    of the Agreement clearly shows that such succession of interest was not only permissible, but

3    contemplated: "Neither di Grazia nor Sazerac shall assign nor transfer this Agreement or any

4    rights granted or obligations assumed hereunder . . . other than by an assignment by di Grazia to

5    his heirs or designated beneficiaries with respect to his right to receive payments hereunder." *Id.*

6    Ex. A (Agreement ¶6).  Finally, Sazerac disputes neither the validity of this provision, nor Mr. di

7    Grazia's status as a third-party beneficiary of the Definitive Agreement, nor Mrs. di Grazia's

8    status as an assignee.  *See id.* Ex. B (Definitive Agreement ¶3) (explicitly stating that Mr. di

9    Grazia was to be paid "[i]n consideration for the rights granted by Herradura to Sazerac under this

10   Agreement"); *see also* MTD at 8 n. 4 ("Sazerac does not dispute . . . that plaintiff is a valid

11   assignee").

12          Sazerac also argues that the Complaint does not state a claim on this point because,

13   once again, Mrs. di Grazia cannot establish that Sazerac failed to do something that it was obliged

14   to do.  MTD at 15:4-19.  Again, this argument was analyzed and rejected above, where Mrs. Di

15   Grazia explains that Sazerac failed to carry out its duty to use its best efforts to make purchases of

16   the Herradura Brands.  *See* Section III.B.*, supra.*

17          In sum, Mrs. di Grazia has stated a claim for breach of duties Sazerac owes her, in

18   her position as third-party beneficiary of the Definitive Agreement.

19   **IV.    <u>CONCLUSION</u>**

20          For all the foregoing reasons, Mrs. di Grazia respectfully requests that the Court

21   deny Defendants' Motion in its entirety, or in the alternative, that the Motion be granted without

22   prejudice and that Mrs. di Grazia be provided leave to file an amended complaint.

23   Dated: May 13, 2008                    Manatt, Phelps & Phillips, LLP

24

25                                          By:   /s/ Ann M. Heimberger
                                                 _____
26                                               Ann M. Heimberger
                                                 Attorneys for Plaintiff
27                                               DEBORAH DI GRAZIA

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

90015002.6                          19              OPPOSITION TO MOTION TO DISMISS
                                                    COMPLAINT (5:08-CV-01562 JW)