1  COOLEY GODWARD KRONISH LLP
   MICHAEL A. ATTANASIO (151529)
2  (mattanasio@cooley.com)
   SAMANTHA M. EVERETT (234402) (severett@cooley.com)
3  4401 Eastgate Mall
   San Diego, CA  92121
4  Telephone:   (858) 550-6000
   Facsimile:   (858) 550-6420
5
   Attorneys for Defendant
6  SAZERAC COMPANY, INC.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN JOSE DIVISION

11

12 | DEBORAH DI GRAZIA,              | Case No.  5:08-CV-01562-JW
13 |         Plaintiff,              | **DEFENDANT SAZERAC COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**
14 |    v.                           |
15 | SAZERAC COMPANY, INC.,          |
16 |         Defendant.              | Date:     June 9, 2008
                                       Time:     9:00 a.m.
                                       Ctrm:     8
17                                     Judge:    Hon. James Ware

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................................1
II. ARGUMENT ........................................................................................................................3
   A. Plaintiff Fails to State a Claim for Breach of Contract....................................................3
      1. Plaintiff Ignores the Plain Terms of the Royalty Agreement ......................3
      2. Plaintiff Cannot Rely on the "Best Efforts" Clause in the Distribution Agreement ........................................................................................5
   B. Plaintiff Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing ...................................................................................................................7
   C. Plaintiff Fails to State a Claim for Unjust Enrichment.............................................9
   D. Plaintiff Fails to State a Claim for Breach of an Implied Covenant to Continue Purchasing Herradura Brands ...................................................................10
   E. Plaintiff Fails to State a Claim for Third-Party Beneficiary Rights ......................11
III. CONCLUSION...................................................................................................................12

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Bloor v. Falstaff Brewing Corp.*,
  454 F. Supp. 258 (S.D.N.Y. 1978) .................................................................................6

*Cabo Distrib. v. Brady*,
  821 F. Supp. 582 (N.D. Cal. 1992) ..................................................................................1

*Carlson Dist. Co. v. Salt Lake Brewing Co.*,
  95 P.3d 1171 (Utah Ct. App. 2004) .................................................................................6

*Carma Developers Inc. v. Marathon Development Cal. Inc.*,
  2 Cal. 4th 342 (1992) ................................................................................................8, 11

*Cates Const. v. Talbot Partners*,
  21 Cal. 4th 28 (1999) .......................................................................................................6

*Central Building, LLC v. Cooper*,
  127 Cal. App. 4th 1053 (2005) ........................................................................................6

*College Block v. Atlantic Richfield Co.*,
  206 Cal. App. 3d 1376 (1988) .....................................................................................8, 9

*Consol. World Invests., Inc. v. Lido Preferred Ltd.*,
  9 Cal. App. 4th 373 (1992) ..............................................................................................5

*Cousins Inv. Co. v. Hastings Clothing Co.*,
  45 Cal. App. 2d 141 (1941) ........................................................................................8, 9

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
  375 F.3d 861 (9th Cir. 2004) ...........................................................................................7

*First Nationwide Savings v. Perry*,
  11 Cal. App. 4th 1657 (1992) ..............................................................................9, 10

*Gulf Ins. Co. v. Hi-Voltage Wire Words, Inc.*,
  388 F. Supp. 2d 1134 (E.D. Cal. 2005) .........................................................................12

*Heppler v. J.M. Peters Co.*,
  73 Cal. App. 4th 1265 (1999) ........................................................................................10

*Levi Strauss & Co. v. Aetna Casualty & Surety Co.*,
  184 Cal. App. 3d 1479 (1986) .........................................................................................2

*Little Oil Co, Inc. v. Atlantic Richfield Co.*,
  852 F.2d 441 (9th Cir. 1988) ...........................................................................................7

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) .....................................................................................9

*Multiplex Ins. Agency, Inc. v. Cal. Life Ins. Co.*,
  189 Cal. App. 3d 925 (1987) ...........................................................................................7

*Murphy v. Allstate Ins. Co.*,
  17 Cal. 3d 936 (1976) ....................................................................................................11

*National City Police Officers' Assn. v. City of National City*,
  87 Cal. App. 4th 1274 (2001) ..........................................................................................4

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

## TABLE OF AUTHORITIES
### (continued)

PAGE

*Seaman's Direct Buying Serv., Inc. v. Standard Oil, Inc.*,
   36 Cal. 3d 752 (1984) ............................................................................................7

*Shaw v. Regents of University of California*,
   58 Cal. App. 4th 44 (1997) .....................................................................................5

*Walnut Creek Pipe Dist. v. Gates Rubber Co. Sales Div.*,
   228 Cal. App. 2 810 (1964) ....................................................................................3

*Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) .................................................................................4

**STATUTES**

Cal. Civ. Code § 1559 ............................................................................................11

**RULES**

Fed. R. Civ. Proc. 19(b) ..........................................................................................7

Rule 12(b)(6) ..........................................................................................................4

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

I. **INTRODUCTION**

In its opening brief, Sazerac established that a "purchase" of tequila by Sazerac from Herradura is the event that triggers any payment obligation by Sazerac to plaintiff. This is true not because Sazerac wishes it were so or because Sazerac asks this Court to draw inferences in its favor. The requirement of a "purchase" is found in the express and unambiguous language of the Royalty Agreement between the parties. *See* Royalty Agreement, ¶1(b)(ii) (payments to plaintiff's husband "based upon purchases of the Brands by Sazerac"); *id.* at ¶2(a)(iii) (after initial guaranteed payment of $2 million, Sazerac agreed to pay a royalty of $6 per case "on the purchases of the brands by Sazerac"). The importance of this condition was underscored when the parties chose to define in the Royalty Agreement when "[p]urchases by Sazerac from Herradura shall be deemed to have occurred." *Id.* at ¶2(a)(v). Why would the parties have negotiated and included this express definition if plaintiff were to be paid other than based on Sazerac's ***purchases*** of Herradura tequila?[1]

Plaintiff does not answer this question anywhere in her 19-page brief. Nor does plaintiff disavow her complaint's admission that she (and her husband) were always paid by Sazerac based on Sazerac's purchases of tequila from Herradura. Compl., ¶17 ("For approximately 15 years, Sazerac made purchases of Herradura Brands, and it made regular payments to Mr. di Grazia based on those purchases."). And plaintiff's complaint does not allege that Sazerac has made any purchases from Herradura for which plaintiff has not already received a handsome royalty.

Plaintiff also has no meaningful response to the parties' telling decision to include alternative payment mechanisms in the early years of the contract but not after January 1, 1999. *See* Royalty Agreement, ¶2(a)(1) ($500,000 upfront payment for inventory); *id.* at ¶2(a)(ii) (guaranteed $2 million minimum payment by December 31, 1998). Had the parties wished to include similar payment mechanisms in the event of a buyout or termination after January 1, 1999

---

[1] In this reply, Sazerac will use the same abbreviations and conventions as defined in its Motion to Dismiss. The underlying agreement between Sazerac and Herradura is referred to as the Distribution Agreement. The agreement between plaintiff and Sazerac is referred to as the Royalty Agreement. Although plaintiff objects to the latter description, *see* Opp. at p. 1, n.1, her semantic quibble is both irrelevant and incorrect. *See, e.g., Cabo Distrib. v. Brady*, 821 F. Supp. 582, 591 (N.D. Cal. 1992) (in sale of rights to certain brand of vodka, "$2.75 million was guaranteed in royalties …").

1  (and after plaintiff was paid at least $2.5 million) they easily could have done so. Instead, the
2  parties expressly agreed that future payments would be made solely "on the purchases of the
3  brands by Sazerac." *Id.* at 2(a)(iii). Although plaintiff now wishes to renegotiate the Royalty
4  Agreement 17 years after it was executed, courts will neither "insert in the contract language
5  which one of the parties now wishes were there" nor "add a term about which a contract is silent."
6  *Levi Strauss & Co. v. Aetna Casualty & Surety Co.*, 184 Cal. App. 3d 1479, 1486 (1986).

7        Unable to rebut the plain language of the Royalty Agreement, plaintiff purports to base
8  her claim on the "best efforts" clause found in the Distribution Agreement between Sazerac and
9  Herradura. Opp. at 7:16-9:23. This argument borders on the frivolous. First, the complaint itself
10 nowhere alleges that Sazerac owed a contractual duty to plaintiff to use "best efforts" to purchase
11 as much tequila as possible from Herradura. Second, neither plaintiff nor her husband were
12 parties to the Distribution Agreement in which the best efforts clause is found. Third, the best
13 efforts clause in the Distribution Agreement says nothing about maximizing sales, as plaintiff
14 suggests, but instead expressly states that "[s]uch efforts shall be directed toward establishing and
15 maintaining the Brands as ***premium products*** in the distilled spirits industry." Distribution
16 Agreement, ¶2(a) (emphasis added). Finally, one wonders how plaintiff can claim that the
17 Distribution Agreement (to which she is not a party) was breached when she admits in her
18 complaint that Herradura (a party to the Distribution Agreement) makes no such claim but instead
19 "entered into an agreement whereby Sazerac voluntarily gave up its rights to distribute Herradura
20 Brands in the United States." Compl. ¶19.

21       Plaintiff's heavy reliance on an inapplicable "best efforts" clause in a distribution contract
22 to which she is not a party speaks volumes about the overall viability of her complaint. Sazerac
23 and plaintiff's husband, both sophisticated parties, entered into the Royalty Agreement after
24 negotiations that contemplated a significant upfront payment, a guaranteed minimum payment of
25 $2 million, and additional payments based exclusively on Sazerac's ***purchases*** of tequila.
26 Royalty Agreement, ¶¶2(a)(1), ¶2(a)(ii), 2(a)(iii), 2(a)(v). Had the parties wished to include
27 language entitling plaintiff to substantial additional payments if Sazerac ceased purchasing tequila
28 from Herradura for any reason, they easily could have done so. The absence of such language in

the Royalty Agreement should end the inquiry. *Walnut Creek Pipe Dist. v. Gates Rubber Co. Sales Div.*, 228 Cal. App. 2 810, 815 (1964) ("courts cannot make better agreements for parties than they themselves have been satisfied to enter into or rewrite contracts because they operate harshly or inequitably").

This is a straightforward case – Sazerac agreed to pay and did pay millions of dollars in royalties to plaintiff and her husband for more than 15 years. The parties expressly agreed, however, that future payments would depend solely on Sazerac's purchases of tequila from Herradura. Plaintiff is not entitled to rewrite the Royalty Agreement today in order to achieve a better result in litigation than was negotiated in 1991. The motion to dismiss should be granted.

## II. ARGUMENT

### A. Plaintiff Fails to State a Claim for Breach of Contract

In her opposition, plaintiff contends that the plain language of the Royalty Agreement does not actually require "purchases" by Sazerac before payments are due to plaintiff. Opp. at 6:13-23. At a minimum, she argues that the existence of this condition is a question for discovery. *Id.* at 6:23-26. Alternatively, plaintiff theorizes that Sazerac's obligation to pay her more money is found not in the Royalty Agreement to which she is a party, but rather in the Distribution Agreement to which she is not. *Id.* at 7:16-9:23. Plaintiff is wrong on all counts.

#### 1. Plaintiff Ignores the Plain Terms of the Royalty Agreement

Plaintiff makes the startling claim that "there is no … language" in the Royalty Agreement conditioning Sazerac's obligation to pay plaintiff on Sazerac's purchases of tequila from Herradura. Opp. at 6:19. Not so. The Royalty Agreement expressly provides that "subsequent payments [will be made to plaintiff's husband] based upon purchases of the Brands by Sazerac."[2] Royalty Agreement, ¶1(b)(ii)(B). *See also id.* at ¶2(a)(iii) ("Sazerac shall make to DiGrazia a payment ***on the purchases*** of the Brands by Sazerac of $6 per 9L case") (emphasis added). The term "purchases" was expressly defined in the same paragraph that set forth the specific payments to plaintiff's husband: "purchases by Sazerac from Herradura shall be deemed

---

[2] For purposes of this motion, Sazerac assumes *arguendo* that plaintiff is a proper assignee of her late husband's rights under the Royalty Agreement.

to have occurred when ownership of the Brands has transferred from Herradura to Sazerac at the F.O.B. point …" *Id.* at ¶2(a)(v).

Plaintiff also half-heartedly suggests that the "purchase" condition is not really a condition because elsewhere the parties conditioned all of their obligations under the Royalty Agreement on the original execution of the Distribution Agreement between Herradura and Sazerac. Opp. at 6:19-23. This is a red herring. It is hardly surprising that plaintiff's husband and Sazerac initially conditioned the Royalty Agreement on Sazerac's ability to finalize the Distribution Agreement with Herradura. Without the latter, there was no basis for the former. But this tells us nothing about the payment structure actually set forth in the Royalty Agreement, including the question of whether the Royalty Agreement required certain events to occur before Sazerac's payment obligations matured. To answer this question, we must turn to the specific provisions in the Royalty Agreement. As detailed in Sazerac's opening brief and above, those provisions unequivocally provide that after January 1, 1999, Sazerac is only obligated to pay plaintiff when Sazerac makes "purchases" of Herradura tequila.

This is hardly a question for discovery as plaintiff suggests. Consistent with proper practice under Rule 12(b)(6), Sazerac has referred only to the complaint and the attached contracts in its opening brief and this reply. Sazerac does not ask the Court to draw any inferences but instead cites only to the plain language of the relevant contracts. Sazerac is entitled to the benefit of a fair reading of that explicit language and that is all Sazerac seeks. *See National City Police Officers' Assn. v. City of National City*, 87 Cal. App. 4th 1274, 1279 (2001) (holding that "language of an instrument must govern its interpretation if the language is clear and explicit"); *Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 665 (9th Cir. 1998) ("neither we nor the district court are required to accept as true conclusory allegations in the complaint which are contradicted by the clear import of the contract itself").

Plaintiff does not, and cannot, allege that any purchases have taken place for which she has not already been paid a significant sum. It is well established that where a defendant's duty to perform is conditioned on an event, plaintiff must plead and prove that the event transpired.

*Consol. World Invests., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992). Accordingly, the breach of contract claim must be dismissed.

### 2. Plaintiff Cannot Rely on the "Best Efforts" Clause in the Distribution Agreement

Unable to muster any support for her claims under the Royalty Agreement, plaintiff turns to the "best efforts" clause of the Distribution Agreement between Sazerac and Herradura. Although she is not a party to that agreement, and although the best efforts clause says nothing about maximizing purchases or sales, plaintiff imagines that Sazerac owed plaintiff "the duty to exert its best efforts to make sales of Herradura Brands, and breached that duty by abandoning its right to make such sales in exchange for a lump-sum payment." Opp. at 9:19-21. This theory suffers from two major defects. First, plaintiff wrongly asserts that the best efforts clause in the Distribution Agreement is incorporated into the Royalty Agreement. Second, plaintiff inaccurately describes and interprets the best efforts language in the Distribution Agreement.

Without citation to any relevant authority, plaintiff claims that because the Royalty Agreement and Distribution Agreement "refer to and rely on upon each other at many points," they are "interdependent." Opp. at 7:21-8:8. From this shaky foundation, plaintiff asserts that terms from the Distribution Agreement, including the best efforts clause, must be incorporated into the Royalty Agreement. Plaintiff concludes her convoluted journey by suggesting that she, a non-party to the Distribution Agreement, is nevertheless the proper party to enforce its terms.

Plaintiff's argument is sophistry. As a threshold matter, the Royalty Agreement simply does not incorporate by reference any terms from the Distribution Agreement. *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 54 (1997) ("[f]or the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal ….") (internal quotation omitted). While the Royalty Agreement is necessarily related to the Distribution Agreement, this is a common occurrence with commercial arrangements involving licenses, royalties, and commissions. Even if one accepts plaintiff's

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

"interdependent" characterization, that is a far cry from concluding that a party to one agreement can enforce the terms of a separate agreement to which she is not a party.[3]

The authority cited by plaintiff only undermines her position. Both of the decisions relied on by plaintiff involve surety contracts that, by their nature and express terms, guarantee the performance of another contract. *See Cates Const. v. Talbot Partners*, 21 Cal. 4th 28, 40 (1999); *Central Building, LLC v. Cooper*, 127 Cal. App. 4th 1053, 1058 (2005). Both *Cates* and *Central Building* invoked Civil Code Section 2787, defining "a surety or guarantor [as] one who promises to answer for the debt, default, or miscarriage of another." *Cates*, 21 Cal. 4th at 40; *Central Building,* 127 Cal. App. 4th at 1058. Plaintiff does not allege that either the Royalty Agreement or the Distribution Agreement contain "guarantee" language such as that found in *Cates* and *Central Building*. Nor do the plain terms of the Royalty Agreement provide that Sazerac would act as a surety or a guarantor of own performance under the Distribution Agreement.

Moreover, the principal "best efforts" cases relied on by plaintiff simply underscore the fatal defect in plaintiff's position. In both of those cases, the party seeking to enforce the "best efforts" clause was a party to the distribution agreement containing that clause. Opp. at 9:1-13 (citing *Bloor v. Falstaff Brewing Corp.*, 454 F. Supp. 258, 260-61 (S.D.N.Y. 1978); *Carlson Dist. Co. v. Salt Lake Brewing Co.*, 95 P.3d 1171 (Utah Ct. App. 2004)). Plaintiff has no such standing here.

Even if the "best efforts" obligation was somehow incorporated into the Royalty Agreement, that obligation only applies to Sazerac's performance under the Distribution Agreement ***while it is in effect***, not after Sazerac and Herradura mutually agree to end their association. The Distribution Agreement provides a termination regime under a variety of scenarios. Distribution Agreement, ¶21. As plaintiff concedes, Herradura is not pressing its own "best efforts" claim but instead "entered into an agreement" with Sazerac "whereby Sazerac voluntarily gave up its rights to distribute Herradura Brands in the United States." Compl., ¶19. Plaintiff has provided no authority for the proposition that she is entitled not only to revive

---

[3] Sazerac also observes that plaintiff's characterization of the two agreements as "interdependent" is inconsistent with her previous contention that Sazerac is obliged to pay her money under the Royalty Agreement even if the Distribution Agreement has ended.

Sazerac's obligations under the now-defunct Distribution Agreement – to which plaintiff is not a party – but also to incorporate them into the Royalty Agreement.[4]

Finally, plaintiff's entire argument is premised on an inaccurate reading of the best efforts clause in the Distribution Agreement. Plaintiff contends that the provision obligated Sazerac "to exert its best efforts to make sales of Herradura Brands…" Opp. at 9:19. Plaintiff is mistaken. The Distribution Agreement states that Sazerac's "[best] efforts shall be directed toward establishing and maintaining the Brands as **premium products** in the distilled spirits industry." Distribution Agreement, ¶2(b) (emphasis added). The provision says nothing about maximizing sales. Thus, even if plaintiff could find comfort in the "best efforts" language – and she cannot because that language is not incorporated into the Royalty Agreement – it would do nothing to advance her assertion that Sazerac should have purchased and sold more Herradura tequila. For this additional reason, her breach of contract claim should be dismissed.

### B. Plaintiff Fails to State a Claim for Breach of the Duty of Good Faith and Fair Dealing

Plaintiff claims that Sazerac breached the implied covenant of good faith and fair dealing because it "willfully injured her right to receive the benefits of the Agreement." Opp. at 10:3-5. To the extent this cause of action sounds in tort, it must fail because plaintiff has not pled that "a special relationship exists between the parties." *Seaman's Direct Buying Serv., Inc. v. Standard Oil, Inc.*, 36 Cal. 3d 752, 768-69 (1984). Nor could plaintiff make such a claim. As a matter of law, there is no special relationship where the contract is "entered into for the usual business reason of profit." *Multiplex Ins. Agency, Inc. v. Cal. Life Ins. Co.*, 189 Cal. App. 3d 925, 937-38 (1987) *Little Oil Co, Inc. v. Atlantic Richfield Co.*, 852 F.2d 441, 446-47 (9th Cir. 1988) (no special relationship in franchisor-franchisee relationship). Even where one party is responsible for the payment of commissions to another party, courts have held that no special relationship is established. *See Multiplex*, 189 Cal. App. 3d at 938.

---

[4] If plaintiff is trying to revive the Distribution Agreement and claim that Sazerac breached its best efforts obligation, she is necessarily litigating the best efforts clause on behalf of Herradura. In that case, she has failed to join an indispensable party – Herradura – and her complaint must also fail for this reason. *See* Fed. R. Civ. Proc. 19(b); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 (9th Cir. 2004).

Moreover, and as discussed in Sazerac's opening brief, the courts will not imply terms in a contract that would vary its express terms. *Carma Developers Inc. v. Marathon Development Cal. Inc.*, 2 Cal. 4th 342, 374 (1992). Plaintiff does not address this authority and nowhere suggests how (or why) the Court should imply a new term – one that would guarantee plaintiff payments even in the absence of purchases – when the express terms of the Royalty Agreement state that all "subsequent payments" to plaintiff's husband will be "based upon purchases of the Brands by Sazerac." Royalty Agreement, ¶1(b)(ii)(B). Plaintiff's second cause of action should be dismissed on this basis alone.

The second cause of action is vulnerable for a third reason. Courts will not imply a duty to continue doing business where there has been a substantial minimum payment. *See Cousins Inv. Co. v. Hastings Clothing Co.*, 45 Cal. App. 2d 141, 149 (1941) (where substantial minimum payment made by obligor, the covenant of good faith and fair dealing will not impose additional duty to stay in business); *College Block v. Atlantic Richfield Co.*, 206 Cal. App. 3d 1376, 1381-82 (1988) (applying same analysis).

Plaintiff contends this authority is inapposite because she is not arguing for an "implied covenant of continued operation." Opp. at 11:1-5. Yet elsewhere in the opposition plaintiff vigorously contends that Sazerac "voluntarily relinquished its right to make sales altogether," *id.* at 2:1-2, "gave up its rights to distribute Herradura Brands," *id.* at 4:19-20, and "abandon[ed]" its business with Herradura "in exchange for a lump sum payment," *id.* at 9:20-21. In other words, plaintiff's precise argument is that Sazerac owed her a covenant to continue operations, *i.e.*, to stay in the business of selling Herradura tequila. Because plaintiff has framed her claim in these terms, the authority cited by Sazerac is relevant and compelling. Plaintiff's husband received guaranteed payments of $500,000 and $2 million in the early years of the Royalty Agreement. Royalty Agreement, ¶¶2(a)(i)-(ii). Thereafter, plaintiff's husband and plaintiff herself have received substantial additional payments. Compl., ¶¶17-18. Under these circumstances, the covenant of good faith and fair dealing will not impose an additional duty on Sazerac to continue doing business with Herradura for plaintiff's benefit. *Cousins*, 45 Cal. App. 2d at 149; *College Block*, 206 Cal. App. 3d at 1381-82.

### C. Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff invests substantial energy discussing the appropriate legal terminology for the claim that she labeled "unjust enrichment." Opp. at 11:24-13:10. Plaintiff's preoccupation on this score is understandable – "there is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003). Plaintiff's third cause of action should be dismissed on this basis alone.

Even assuming *arguendo* that plaintiff is entitled to rewrite her complaint in an opposition brief, the third cause of action is still fatally flawed. Whether plaintiff's claim is labeled unjust enrichment, quasi-contract, or restitution, it fails because she has not alleged why it was "unjust" for Sazerac to retain a benefit that it was entitled to retain. Plaintiff's claim rests on the proposition, directly contradicted by the Royalty Agreement, that Sazerac has some duty to pay plaintiff additional sums even if Sazerac is not making any purchases of Herradura tequila (and even after plaintiff and her husband were already paid millions of dollars). As plaintiff herself admits, her claim is dependent on the assertion that Sazerac received payment for its rights "contrary to the terms of the [Royalty] Agreement." Opp. at 13:17-20.

Not surprisingly, plaintiff's invocation of the Royalty Agreement in this passage (and elsewhere) arrives without any citation to a specific provision. This is because there is no language in the Royalty Agreement that: (1) requires Sazerac to pay plaintiff upon any event other than the purchase of Herradura tequila; or (2) requires Sazerac to pay plaintiff if Sazerac's rights under the Distribution Agreement are terminated voluntarily or involuntarily. Plaintiff's inability to plead that which she admits is required – conduct by Sazerac "contrary to the terms of the Royalty Agreement" – requires dismissal of her third cause of action.

Nor does plaintiff cite to any relevant authority to support her theory that Sazerac is subject to the extra-contractual obligations she ***now*** wishes to impose. Plaintiff's heavy reliance on *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1669-70 (1992), is especially misplaced. Opp. at 14:6-28. In that case, the defendant kept all of the proceeds from a sale of real property with actual knowledge that the property was partially owned by plaintiff. Reversing a sustained demurrer, the court concluded that plaintiff pled sufficient facts to proceed on a claim for unjust enrichment. *Id.*

at 1671. The decision in *First Nationwide* involved documented mutual ownership of real property; it is logical that neither party could keep 100% of the proceeds from a sale of that land.

These facts could not be more different from the present dispute, which involves a straightforward commercial agreement to pay royalties upon the purchase of a specified product. Indeed, the decision in *First Nationwide* actually highlights the weakness of plaintiff's claim because it underscores what plaintiff fails to plead in **her** complaint: (1) plaintiff is not a party to the Distribution Agreement and the Royalty Agreement by its own terms does not invest plaintiff with any ownership rights in the Distribution Agreement; (2) unlike the plaintiff in *First Nationwide*, which held a deed of trust over the subject property, plaintiff cannot plead any ownership interest in Sazerac's rights under the Distribution Agreement; and (3) Sazerac has not sold or conveyed any property interest in a way that violates any term of the Royalty Agreement with plaintiff.

Whatever label plaintiff attaches to her third cause of action, what she is really seeking is to insert a new clause into the Royalty Agreement that would entitle her to an additional substantial payment for events other than Sazerac's "purchases" of tequila. But that is not what the parties agreed to and plaintiff is not entitled to conduct a "do-over" of the negotiations that took place 17 years ago between two sophisticated parties. Had plaintiff's husband wished to negotiate for a guaranteed payment in the event Sazerac's rights under the Distribution Agreement were terminated or bought out, he certainly could have done so. In the absence of such a provision, however, plaintiff has no basis to claim that Sazerac was "unjustly enriched" when Sazerac's conduct was firmly within the bounds of both agreements. *See Heppler v. J.M. Peters Co.*, 73 Cal. App. 4th 1265, 1291 (1999) (declining to enforce alleged term of agreement because parties "could have included such a provision" had that been their intent).

### D. Plaintiff Fails to State a Claim for Breach of an Implied Covenant to Continue Purchasing Herradura Brands

Plaintiff asks the court to imply a covenant on the part of Sazerac to continue purchasing Herradura brands, and she contends that such a covenant is indispensable to the Royalty Agreement. In support of this theory, plaintiff again relies on her claim that Sazerac was required to use its "best efforts" to sell as much Herradura tequila as possible under the Distribution

Agreement. Opp. at 16:15-25. As discussed above, this claim fails because: (1) the best efforts clause in the Distribution Agreement was not incorporated into the Royalty Agreement; and (2) the language of the clause speaks to maintaining Herradura as a "premium brand," not to maximizing purchases or sales. Distribution Agreement, ¶2(a).

Moreover, plaintiff provides no meaningful response to the fact that the implied covenant she proposes would alter the express terms of the Royalty Agreement. As Sazerac has painstakingly documented, the Royalty Agreement sets forth a specific payment regime that included an upfront payment of $500,000 based on inventory then on hand; a guaranteed minimum payment of $2 million; and additional payments based exclusively on Sazerac's purchases of tequila. Royalty Agreement, ¶¶2(a)(1), ¶2(a)(ii), 2(a)(iii), 2(a)(v).[5] Plaintiff cannot dispute that she now wishes to be paid for something else and in a different way. This is precisely the sort of "implied" amendment to express contractual terms that California law prohibits. *See Carma Developers*, 2 Cal. 4th at 374.

### E. Plaintiff Fails to State a Claim for Third-Party Beneficiary Rights

In advancing her claim as a third-party beneficiary, plaintiff conflates the two agreements at issue. In its opening brief, Sazerac observed that the plaintiff must plead "that the subject contract was made expressly for her benefit and that it clearly appears in the contract that she was an intended beneficiary." Opening Brief at 14:14-17 (citing Cal. Civ. Code § 1559; *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 936, 943 (1976)). Based on plaintiff's complaint, the "subject contract" is not the Royalty Agreement but rather the Distribution Agreement. Compl., ¶¶38-41. It is undisputed that plaintiff nowhere pleads (nor could she) that *she* was intended to be an express beneficiary of the Distribution Agreement. Plaintiff's reliance on the assignment clause in the Royalty Agreement, Opp. at 18:19-19:11, is no cure for this fatal defect.

---

[5] Plaintiff states "that there was no minimum payment" due from Sazerac under the Royalty Agreement. Opp. at 17:5 & n.9. This mystifying contention is belied by the plain terms of the provisions set forth in the text above. The "initial payment" of $500,000 was tied to a portion of the inventory that the parties recognized was then "existing." Royalty Agreement, ¶¶1(d)(i)(A) and 2(a)(1). The next $2 million due plaintiff's husband was also guaranteed – "If by December 31, 1998, Sazerac has not made to DiGrazia payments totaling $2,000,000, Sazerac will pay to DiGrazia, on that date, an amount equal to the difference between actual payments made and $2,000,000." *Id.* at ¶2(a)(ii). It bears emphasis that plaintiff acknowledges that each of these guaranteed amounts (and much more) was in fact paid. *See* Compl. ¶¶17-18.

Even if she had standing as a third-party beneficiary, plaintiff cannot maintain her claim because she does not plead that Sazerac violated the Distribution Agreement. *See* Compl. ¶¶37-42. An alleged third-party beneficiary is only entitled to enforce the underlying contract in the event of a breach of that contract. *Gulf Ins. Co. v. Hi-Voltage Wire Words, Inc.*, 388 F. Supp. 2d 1134, 1336-37 (E.D. Cal. 2005). Although plaintiff now imagines that Sazerac somehow violated the "best efforts" clause in the Distribution Agreement, that allegation is absent from the complaint and is in fact expressly contradicted by the specific allegations therein. *See* Compl., ¶19 (alleging that "Herradura and Sazerac entered into an agreement whereby Sazerac *voluntarily* gave up its rights to distribute Herradura Brands in the United States"). Moreover, plaintiff is simply wrong when she contends that the "best efforts" language relates to maximizing purchases and sales of tequila; as discussed above, the clause relates solely to maintaining the brands as premium products. Distribution Agreement, ¶2(a). Plaintiff cannot complain of a breach that did not occur. The fifth cause of action should be dismissed.

### III. CONCLUSION

For each of the foregoing reasons and those asserted in Sazerac's Motion to Dismiss, Sazerac respectfully requests that this Court dismiss with prejudice, and without leave to amend, each cause of action asserted in plaintiff's complaint.

Dated: May 23, 2008

COOLEY GODWARD KRONISH LLP
MICHAEL A. ATTANASIO (151529)
SAMANTHA M. EVERETT (234402)

/s/
Michael A. Attanasio
Attorneys for Defendant
SAZERAC COMPANY, INC.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

# PROOF OF SERVICE
## (FRCP 5)

I am a citizen of the United States and a resident of the State of California. I am employed in San Diego County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is Cooley Godward Kronish LLP, 4401 Eastgate Mall, San Diego, California 92121. On the date set forth below I served the documents described below in the manner described below:

**DEFENDANT SAZERAC COMPANY REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

on the following part(ies) in this action:

☒ (BY ELECTRONIC MAIL) I am personally and readily familiar with the business practice of Cooley Godward Kronish LLP for the preparation and processing of documents in portable document format (PDF) for e-mailing, and I caused said documents to be prepared in PDF and then served by electronic mail to the parties listed below.

Andrew A. Bassak    abassak@mannatt.com, emaestro@manatt.com
Ann M. Heimberger   aheimberger@manatt.com, privera@manatt.com
Ross Kerr Naughton  rnaughton@manatt.com

Executed on May 23, 2008, at San Diego, California.

/s/_____
Jacqueline J. Foglio

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

13.